A08A1297. RICHBOW v. THE STATE.
(667 SE2d 418)

BARNES, Chief Judge.
David Harold Richbow appeals his conviction for trafficking in marijuana, contending that the trial court erred in denying his motion to suppress. Because the trial court did not err in concluding that the arresting officers had sufficient reasonable suspicion of criminal activity to justify detaining Richbow for an additional five minutes until a drug dog arrived and alerted, we affirm.

> In reviewing a trial court's order on a motion to suppress, we construe the evidence most favorably to uphold the court's decision. The trial court sits as the trier of fact; its findings are akin to a jury verdict and will not be disturbed if there is any evidence to support them. Stated another way, in the absence of evidence of record demand-

---

ing a finding contrary to the judge's determination, the appellate court will not reverse the ruling sustaining a motion to suppress.

(Citations and punctuation omitted.) *State v. Stephens*, 289 Ga. App. 167 (657 SE2d 18) (2008).

Richbow was driving north on Interstate 75 in Gordon County at 7:45 p.m. when he passed two police officers in a patrol car in the median. His speed dropped "drastically" from 70 mph to about 50, and the officers saw that his tag light was not working. While it was a natural reaction to slow down when passing a patrol car, it was not normal to slow down that much. They stopped him, and as the arresting officer approached his car he smelled a strong odor of air freshener and saw one bag-type air freshener on the rear deck and another bag stuffed into the interior vent. Using air fresheners is a "common practice when [drug dealers are] trying to cover the odor of illegal narcotics." As the officer asked for Richbow's license, Richbow was "visibly shaken. He was breathing real deep and rapid, and his lips were actually real dry and white in color." While many drivers were nervous when stopped by the police, Richbow was more nervous than usual, and the officer could see his pulse pounding in his neck. Three cell phones were visible in the car, which was an unusual number.

The officer explained that he stopped the car because it had no tag light, and when Richbow responded that he had not known and would get it fixed, his voice was shaky and he could hardly speak. The officer said he would just write a warning ticket and "went into a general conversation with him to evaluate the nervous level," but instead of becoming less nervous, as most motorists do when they know they will not get a ticket, Richbow's nervousness increased.

While the first officer was writing the warning ticket, a second officer returned to his patrol car and gave Richbow's tag and license information to an immigration customs enforcement database intelligence center, and based on the information he received and the other factors described, he called for a drug dog to come to the scene. The first officer finished writing the warning and the dog arrived within two minutes of being called. The dog gave a positive response while circling the car, which gave the officers probable cause to search it. *Boggs v. State*, 194 Ga. App. 264 (390 SE2d 423) (1990). The officers found four large bales containing more than 100 pounds of marijuana in the trunk of Richbow's car.

Richbow was indicted for trafficking, and after the trial court denied his motion to suppress, he stipulated at a bench trial that the substance found in the trunk was marijuana and that the four bales weighed at least 100 pounds. The State played a video of the stop

during the trial, which showed that twelve and a half minutes elapsed between the beginning of the stop and the dog's arrival.

In denying Richbow's motion to suppress, the trial court held that his "excessive nervousness coupled with the air freshener and the cell phones being visible would be sufficient to justify further inquiry, and fortunately," the delay until the dog was summoned and put into action was only about five minutes. The court held that, given the circumstances, five minutes was not an inordinate delay, and denied the motion.

Richbow argues on appeal that the trial court should have granted his motion to suppress because he was detained beyond the time necessary to complete the traffic stop, and the officers had no objectively reasonable suspicions to justify his continued detention. While the State argues that the stop had not been completed when the dog arrived because the officer was still writing the warning ticket, the trial court did not find that the stop was ongoing and the record does not support that contention. The officer testified that the dog arrived a minute or two after he finished writing the ticket, which he was still holding. The trial court concluded, not that the traffic stop was ongoing when the dog arrived, but that the five-minute delay after the stop was completed was not inordinately long.

"The officer's purpose in an ordinary traffic stop is to enforce the laws of the roadway, and ordinarily to investigate the manner of driving with the intent to issue a citation or warning. Once the purpose of that stop has been fulfilled, the continued detention of the car and the occupants amounts to a second detention." (Citation and punctuation omitted.) *Salmeron v. State*, 280 Ga. 735, 736 (1) (632 SE2d 645) (2006). While "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission," *Illinois v. Caballes*, 543 U. S. 405, 407 (125 SC 834, 160 LE2d 842) (2005), "a law enforcement officer's continued questioning of a vehicle's driver and passengers outside the scope of a valid traffic stop passes muster under the Fourth Amendment . . . when the officer has a reasonable articulable suspicion of other illegal activity." *Daniel v. State*, 277 Ga. 840, 841-842 (1) (597 SE2d 116) (2004).

In this case the State argues that the very brief continued seizure was justified not solely because of the warning ticket but also because of other factors, including extreme nervousness, excessive air freshener, and multiple cell phones. "Whether a given set of facts rises to the level of reasonable, articulable suspicion of criminal activity is a legal question." *Jones v. State*, 253 Ga. App. 870, 873 (560 SE2d 749) (2002). Here, less than two minutes elapsed between the time the officer finished writing the warning ticket and the drug

dog's arrival. Because the dog was working nearby on I-75 and arrived almost immediately, "any further delay due to retrieving the dog and conducting the walk-around of the vehicle was minimal." *Wilson v. State*, 293 Ga. App. 136, 138 (666 SE2d 573) (2008).

Many cases evaluate whether the presence of certain elements constitutes enough evidence to create a reasonable suspicion of criminal activity that permits further inquiry. Regarding the elements of nervousness, cell phones, and air freshener, nervousness alone is not enough, *Gonzales v. State*, 255 Ga. App. 149, 150 (564 SE2d 552) (2002), nor are nervousness and meaningless inconsistencies. *Migliore v. State*, 240 Ga. App. 783, 786 (525 SE2d 166) (1999); *Simmons v. State*, 223 Ga. App. 781, 782 (2) (479 SE2d 123) (1996). Traveling a known drug route, nervousness, heavy air freshener and conflicting itinerary accounts may be sufficient. *Jones v. State*, supra, 253 Ga. App. at 873. Increasing nervousness and meaningful inconsistencies also may be enough to justify continued detention, *Pitts v. State*, 221 Ga. App. 309, 311 (2) (471 SE2d 270) (1996); *Roundtree v. State*, 213 Ga. App. 793, 794 (446 SE2d 204) (1994), but nervousness and a heavy masking scent may not be. *State v. Thompson*, 256 Ga. App. 188, 190 (569 SE2d 254) (2002). Multiple cell phones along with other elements may be sufficient. See *State of Ga. v. Montford*, 217 Ga. App. 339, 340-341 (1) (457 SE2d 229) (1995). All three elements of nervousness, multiple cell phones, and a masking scent may or may not be enough to detain someone.

But we cannot simply decide in the abstract which elements in combination or apart constitute reasonable suspicion, because each case is different. The strength of the evidence — the degree of nervousness, the number of phones, the thickness of the masking scent — and the length of continued detention must be considered together to determine whether a trial court's decision to grant or deny a motion to suppress passes constitutional muster.

As the trial court asked at the motions hearing:

Is five minutes too long, is ten minutes too long, is thirty minutes too long? Well, this is just almost too long, but not quite. Given the circumstances of the case, I'm going to deny the motion to suppress, but it's just a good thing the dog was real handy because if there had been a thirty minute delay, it would have been unreasonable. For purposes of appeal, . . . we essentially had about a five-minute delay while the drug dogs were getting summoned and arrived and put into action. And my ruling is that given the circumstances exhibited by the defendant with the air freshener and cell phones and so forth, that that was not an inordinate delay.

Considering the totality of the circumstances, the trial court did not err in concluding that this minimal delay was justified. Accordingly, we affirm Richbow's conviction for marijuana trafficking.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 16, 2008.

*Rebecca B. Paris*, for appellant.

*T. Joseph Campbell*, District Attorney, *Sharon M. Fox*, Assistant District Attorney, for appellee.