A11A0412. YOUNG v. THE STATE.
A11A0447. WILLIAMS v. THE STATE.
(712 SE2d 652)

DILLARD, Judge.

In these companion cases, Frank E. Young, Jr., and Keithney S. Williams appeal from their convictions following a stipulated bench trial on trafficking in marijuana.[1] Young and Williams argue that the trial court erred in denying their motions to suppress the drug evidence on the ground that it was unlawfully seized after the

---

[1] Young and Williams were also both charged with and convicted of the offenses of possession with intent to distribute marijuana and possession of marijuana, but those convictions merged with their respective trafficking convictions for sentencing purposes.

arresting officer impermissibly expanded the scope of the initial traffic stop. We disagree and affirm.

In reviewing the denial of a motion to suppress physical evidence, we construe the evidence in the light most favorable to the trial court's findings and judgment.[2] To the extent that the evidence is in conflict, "we will not disturb the lower court's ruling if there is any evidence to support its findings, and we accept that court's credibility assessments unless clearly erroneous."[3] We, nonetheless, review de novo the trial court's application of law to the undisputed facts.[4]

So viewed, the evidence shows that on June 24, 2007, an officer with the Georgia State Patrol stopped a 1996 Freightliner tractor truck on Interstate 59 after noticing the truck's cracked windshield. Upon approaching the cab of the truck, the officer observed that the truck's flatbed was empty and the transport chains were covered in an excessive amount of rust, indicating that they had not been used recently. He further observed two safety infractions, namely low tire tread and improperly secured air hoses. When Williams, the driver, opened the door of the cab, the officer immediately noticed a strong odor of perfume emanating from the interior of the truck. Based upon his training and experience, the officer knew that drug traffickers frequently use air fresheners and other strong fragrances to mask the smell of narcotics, and thus became suspicious.

The officer requested that Williams retrieve his driver's license, insurance, and registration, as well as the paperwork associated with a commercial vehicle, including a logbook, cab card, and medical card. As the officer spoke with Williams, he observed that Young, the passenger, avoided making eye contact. The officer asked Williams to exit the cab and, as he did so, the officer inquired as to the purpose of his trip. The officer's suspicions were piqued when Williams indicated that he was driving from Houston, Texas, to Knoxville, Tennessee, but was not hauling any goods on the flatbed of his truck—a costly undertaking for a truck driver. Williams claimed that he planned on buying a trailer in Knoxville and hauling it back to Houston, although he could not identify the place where he intended to make this significant purchase. The officer requested that Williams sit on the guardrail while he processed the citations for the windshield and other safety infractions.

Upon returning to his patrol car, the officer immediately requested a K-9 unit to conduct a free-air scan of the truck, and then ran a computer check on Williams's license, as well as a check for

---

[2] *Sommese v. State*, 299 Ga. App. 664, 665 (683 SE2d 642) (2009).

[3] *Id.* (citation and punctuation omitted).

[4] *Id.*

outstanding warrants and criminal histories on both Young and Williams.

Approximately ten minutes after the officer's call, the K-9 unit arrived. The K-9 handler received the officer's permission to begin the free-air scan of the truck, and the dog alerted to the driver's side door, indicating that it sensed the presence of narcotics. At that time, the officer was in the process of obtaining Young and Williams's respective criminal history information. The K-9 handler then searched the truck and discovered more than 108 pounds of marijuana located under the bunk in the truck's cab. This entire episode, from the time of the stop to the discovery of the drugs, lasted 23 minutes.

Thereafter, Young and Williams both moved to suppress the drug evidence on the ground that the officer impermissibly expanded the scope of the initial traffic stop when he (1) inquired into the purpose of their trip, and (2) unlawfully detained them while waiting for the K-9 unit. Following a hearing, the trial court denied these motions, then convicted Young and Williams of the crimes charged against them pursuant to a stipulated bench trial.

Young and Williams argue on appeal that the trial court erred in denying their motions to suppress. We disagree.

It is axiomatic that a police officer who observes a traffic violation is authorized to conduct a traffic stop of the vehicle in question.[5] Once a valid traffic stop has been effected, the Fourth Amendment prohibits the officer from unreasonably prolonging the stop beyond the time required to fulfill the purpose of the stop without a reasonable articulable suspicion of other illegal activity.[6] But a reasonable time to conduct a traffic stop includes the time necessary for the officer to run a computer check on the validity of the driver's license and registration,[7] and to check for outstanding warrants and/or criminal histories on the driver and other occupants.[8] The law further allows the officer to question the vehicle's

---

[5] *See, e.g., State v. Menezes*, 286 Ga. App. 280, 282 (2) (648 SE2d 741) (2007) ("When the arresting officer observed a traffic violation, he was authorized to initiate a traffic stop."); *Hines v. State*, 214 Ga. App. 476, 477 (448 SE2d 226) (1994) ("It is evident that the stop of a vehicle is authorized if an officer observes the commission of a traffic offense." (citation omitted)).

[6] *See, e.g., Salmeron v. State*, 280 Ga. 735, 736 (1) (632 SE2d 645) (2006).

[7] *See, e.g., Rosas v. State*, 276 Ga. App. 513, 517-18 (1) (c) (624 SE2d 142) (2005); *see also Salmeron*, 280 Ga. at 737 (1) ("It does not unreasonably expand the scope or duration of a valid traffic stop for an officer to prolong the stop to immediately investigate and determine if the driver is entitled to continue to operate the vehicle by checking the status of the driver's license, insurance, and vehicle registration." (citation and punctuation omitted)).

[8] *See, e.g., Rosas*, 276 Ga. App. at 517-18 (1) (c); *see also Sommese*, 299 Ga. App. at 669 (1) (b) ("A reasonable time [to conduct a traffic stop] also includes the time necessary to run a computer check to determine whether there are any outstanding arrest warrants for the

driver and/or its occupants during the course of the stop, and even to "lawfully ask questions unrelated to the purpose of a valid traffic stop, so long as the questioning does not unreasonably prolong the detention."[9] And finally, an officer may order a free-air search of the area surrounding the vehicle by a trained canine without implicating the Fourth Amendment, if the same is performed without unreasonably extending the stop.[10] As with any Fourth Amendment analysis, the touchstone of our inquiry is the reasonableness of the officer's conduct, which is measured in objective terms by examining the totality of the circumstances.[11]

Here, Young and Williams do not contest the legality of the traffic stop, nor do they challenge the search after the K-9 alerted to the cab of the truck; thus, the only question before us is whether the officer's conduct prior to the search amounted to an unlawful detention. And on the record before us, we conclude that it did not.

After stopping the commercial truck due to a cracked windshield, the officer requested from Williams the relevant paperwork, asked him to step out of the cab of the truck, and engaged him in a brief conversation about the purpose of his trip. As discussed supra, each of these actions fell squarely within the officer's lawful authority to effect the traffic stop.[12] And because the officer's suspicions were piqued by his observations of the truck's condition, the strong scent of perfume emanating from the cab, Young's demeanor, and Williams's responses to the officer's brief questioning, the officer was then prompted (and authorized) to request a K-9 unit and to run criminal histories on both men.[13] Moreover, there is no evidence to suggest that the officer delayed in making either query. And the officer's testimony unequivocally establishes that the traffic stop was ongoing when the K-9 unit arrived approximately ten minutes later and, indeed, that he was still in the process of obtaining the results

driver or the passengers." (citation and punctuation omitted)).

[9] *Matthews v. State*, 294 Ga. App. 836, 838 (2) (670 SE2d 520) (2008) (citation omitted); *see Salmeron*, 280 Ga. at 736 (1) ("[T]he dispositive factor . . . is not the nature or subject of the officer's questioning, but whether that questioning took place during [a defendant's] otherwise lawful detention for committing the traffic violations in the officer's presence."); *Hayes v. State*, 292 Ga. App. 724, 729 (2) (c) (665 SE2d 422) (2008) ("[A]ny questioning or small talk, of course, prolongs the detention[;] [t]he question is whether the prolongation is reasonable or unreasonable." (footnote omitted)); *see also Muehler v. Mena*, 544 U. S. 93, 101 (125 SC 1465, 161 LE2d 299) (2005).

[10] *See, e.g., Bowens v. State*, 276 Ga. App. 520, 521-22, n.3 (623 SE2d 677) (2006); *Byers v. State*, 272 Ga. App. 664, 666 (613 SE2d 193) (2005).

[11] *See, e.g., Johnson v. State*, 299 Ga. App. 474, 478 (682 SE2d 601) (2009).

[12] *See generally Salmeron*, 280 Ga. at 737 (1); *Sommese*, 299 Ga. App. at 669 (1) (b); *Matthews*, 294 Ga. App. at 838 (2); *Rosas*, 276 Ga. App. at 517-18 (1) (c).

[13] *See generally Sommese*, 299 Ga. App. at 669 (1) (b); *Bowens*, 276 Ga. App. at 521-22, n.3; *Rosas*, 276 Ga. App. at 517-18 (1) (c); *Byers*, 272 Ga. App. at 665-66.

of Young's and Williams's respective criminal histories when the dog alerted its handler to the presence of narcotics. Under these circumstances, Young and Williams have failed to establish that the actions of the officer unreasonably expanded the scope or duration of the traffic stop.[14] It follows then, that the trial court did not err in denying their motions to suppress.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED JUNE 23, 2011.

*Cook & Connelly, Rex B. Abernathy*, for appellant (case no. A11A0412).

*Johnny R. Dennis*, for appellant (case no. A11A0447).

*Herbert E. Franklin, Jr., District Attorney, Bruce E. Roberts, Assistant District Attorney*, for appellee.

---

[14] *See, e.g., Sommese*, 299 Ga. App. at 670 (1) (c) (rejecting appellant's claim that traffic stop was unreasonably prolonged by officer waiting for back-up when officer was otherwise engaged in other tasks and had not yet completed citation paperwork when back-up arrived); *Bowens*, 276 Ga. App. at 521-22, n.3 (upholding as reasonable free-air search of vehicle conducted while officer awaited results of license check); *Byers*, 272 Ga. App. at 665-66 (concluding that free-air search conducted while officer was writing traffic citation was lawful and did not expand the scope of the stop). *Compare State v. Thompson*, 256 Ga. App. 188, 189-90 (569 SE2d 254) (2002) (excluding evidence obtained as a result of officer's continued questioning of defendant after citation had been written and license returned defendant, resulting in a 20-minute delay while waiting for drug dog after traffic stop had concluded); *Gonzales v. State*, 255 Ga. App. 149, 150 (564 SE2d 552) (2002) (holding that officer went beyond permissible scope of investigation when he questioned defendants after traffic stop had ended but lacked reasonable suspicion to do so).