**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**October 9, 2012**

# In the Court of Appeals of Georgia

A12A1313. ROCHA v. THE STATE.

DILLARD, Judge.

Following a stipulated bench trial, Pete Rocha was convicted of trafficking in cocaine. On appeal, Rocha contends that the trial court erred in denying his motion to suppress the drug evidence, arguing that his consent to the search of his vehicle and the resulting seizure of the cocaine was the product of an impermissibly prolonged traffic stop. He further argues that without the unlawfully seized cocaine, the evidence was insufficient to sustain his conviction. For the reasons set forth *infra*, we affirm.

Construing the evidence to uphold the trial court's findings and judgment,[1] the record shows that around 10:00 a.m. on September 20, 2005, a Douglas County

---

[1] *See Hammont v. State*, 309 Ga. App. 395, 396 (710 SE2d 598) (2011).

Sheriff's Department deputy, who was on traffic patrol on Interstate 20, observed a large commercial passenger bus that did not bear either an operating company's trade name or the Federal Motor Carrier Safety Administration ("FMCSA") identification number as required by the United States DOT.[2] The deputy then began following the bus, ran a computer check on the bus's Texas license tag number as he followed, and determined that the tag had expired in 2003. Consequently, the deputy initiated a traffic stop.

After the bus stopped, the driver exited the vehicle, and the deputy asked him for his driver's license and whether there were any passengers on board. The driver stated that there were no passengers and that his license was on the bus. Subsequently, both the deputy and the driver entered the bus, and the driver retrieved his license, which indicated that his name was Pete Rocha. The deputy then inquired about the lack of passengers and the expired license tag. Rocha responded that he had transported hurricane Katrina evacuees the previous day from Houston, Texas to Birmingham, Alabama, and that he was currently traveling to Gaffney, South Carolina to pick up additional evacuees. He also claimed that the bus was owned by Genesis Bus Lines, and he produced a temporary Texas license tag, which was not

---

[2] *See* 49 CFR § 390.21.

2

scheduled to become active until 4:00 p.m. that same day, but in the deputy's opinion, was not valid for use by commercial vehicles in Georgia.

As he was speaking to Rocha, the deputy saw that a woman lying down on a seat at the back of the bus was looking at him. By this time, another officer had arrived on the scene, so the deputy left Rocha with that officer and went to talk to the woman at the back of the bus. While walking to the back, the deputy noticed that the bus was spotlessly clean, which he thought was odd given Rocha's claim that he had very recently transported hurricane evacuees. Upon reaching the seat where the woman was lying, the deputy observed that she now appeared to be asleep despite the fact that he had made eye contact with her only a few moments earlier. After waking the woman up, the deputy obtained her driver's license, which indicated that her name was Digna Ordonez, and determined that she was Rocha's co-driver. And although Ordonez similarly stated that she and Rocha were going to pick up hurricane evacuees in South Carolina, she did not claim that they had recently dropped off evacuees in Birmingham.

After speaking to Ordonez, the deputy requested that Rocha and Ordonez provide the driver's log books that they were required to maintain.[3] And upon

---

[3] *See* 49 CFR § 395.8.

3

examining those log books, the deputy observed that they contained inconsistent entries, indicated that the operating company was Adame Bus Lines rather than Genesis as Rocha had claimed, and made no mention of a stop in Birmingham. Rocha could not explain these inconsistencies, and despite the deputy's request, he could not provide any paperwork or documentation for the evacuees that he had allegedly just dropped off or for those that he was going to pick up. In addition, although Rocha had initially claimed that he was taking the evacuees who were currently in South Carolina to Atlanta, he now stated that he was transporting those evacuees back to Houston.

Based on the inconsistencies in Rocha and Ordonez's statements and their log books, the deputy became suspicious and asked Rocha if there was any contraband on the bus. Rocha replied negatively. Nevertheless, the deputy asked if he could search the bus, and both Rocha and Ordonez consented. Shortly after beginning the search, and approximately ten minutes after the deputy initiated the traffic stop, the second officer found a black duffle bag in a compartment under the driver's seat that allowed one to access the bus's engine. And inside the duffle bag, the officer found over 14 kilograms of cocaine.

Rocha and Ordonez were both charged, via indictment, with one count of trafficking in cocaine.[4] Thereafter, Rocha filed a motion to suppress the drug evidence on the ground that his consent to the search of the bus was the result of an impermissibly prolonged traffic stop. The trial court held a hearing on Rocha's motion, during which only the sheriff's deputy who conducted the traffic stop testified. And after taking Rocha's motion under advisement, the trial court ultimately denied it.

Rocha then waived his right to a jury and proceeded with a stipulated bench trial. During his trial, the State summarized the details of the traffic stop and introduced a GBI forensic report indicating that the cocaine found on the bus weighed 14.11 kilograms and had a purity of 66.6 percent. Consequently, the trial court found Rocha guilty of trafficking in cocaine. Thereafter, Rocha filed a motion for new trial, which the trial court denied. This appeal follows.

At the outset, we note that in reviewing a trial court's decision on a motion to suppress, "we construe the evidence most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility of the

_____

[4] OCGA § 16-13-31 (a) (1).

witnesses are adopted unless they are clearly erroneous."[5] Furthermore, because the trial court is the trier of fact, its findings are "analogous to a jury verdict and will not be disturbed if any evidence supports them."[6] However, we review *de novo* the trial court's application of law to the undisputed facts.[7]

1. Rocha contends that the trial court erred in denying his motion to suppress the drug evidence, arguing that his consent to the search of the bus was the product of an impermissibly prolonged traffic stop. We disagree.

Although it is well established under Georgia law that "a police officer who observes a traffic violation is authorized to conduct a traffic stop of the vehicle in question[,]"[8] as this Court has previously noted, "[t]he issue of the validity of a consent to search given during a traffic stop is a difficult area of the law and one which has caused much confusion in the real world."[9] However, in *Salmeron v.*

---

[5] *Hammont*, 309 Ga. App. at 396 (punctuation omitted).

[6] *Christy v. State*, 315 Ga. App. 647, 650 (727 SE2d 269) (2012) (punctuation omitted).

[7] *Young v. State*, 310 Ga. App. 270, 271 (712 SE2d 652) (2011).

[8] *Id.* at 272.

[9] *Matthews v. State*, 294 Ga. App. 836, 838 (2) (670 SE2d 520) (2008) (punctuation omitted).

*State*,[10] our Supreme Court clarified this area of the law to a certain degree by holding that the Fourth Amendment "is not violated when, during the course of a valid traffic stop, an officer questions the driver or occupants of a vehicle and requests consent to conduct a search."[11] And if a driver is questioned and gives consent while he is being lawfully detained during a traffic stop, "there is no Fourth Amendment violation."[12]

Furthermore, the police may lawfully ask questions unrelated to the purpose of a valid traffic stop, "so long as the questioning does not unreasonably prolong the detention."[13] Specifically, we have held that a reasonable time includes the "time necessary to verify the driver's license, insurance, registration, and to complete any paperwork connected with the citation or written warning."[14] It also includes the time

---

[10] 280 Ga. 735 (632 SE2d 645) (2006).

[11] *Id.* at 736 (1).

[12] *Id.* (citation omitted).

[13] *Matthews*, 294 Ga. App. at 838 (2).

[14] *Id.* (punctuation omitted).

7

necessary to "run a computer check to determine whether there are any outstanding arrest warrants for the driver or the passengers."[15]

Here, the sheriff's deputy asked for consent to search the bus while he was still investigating whether Rocha, Ordonez, and the vehicle itself were in compliance with the state and federal regulations pertaining to the operation of commercial-passenger vehicles. And importantly, the deputy asked for and received consent approximately ten minutes after he first stopped Rocha for driving with an expired license tag and failing to display a logo for the bus's operating company or its FMCSA identification number. Given these circumstances, we cannot conclude that the deputy's conduct unreasonably prolonged Rocha's detention and rendered his consent to the search of the bus invalid.[16]

Moreover, we find that the information the deputy learned during the course of the traffic stop provided him with a reasonable, articulable suspicion to prolong the traffic stop. Specifically, the inconsistencies in Rocha and Ordonez's statements

---

[15] *Id.* (punctuation omitted).

[16] *See id.* at 838 (2) (a) (holding that police officer's request to search vehicle less than 18 minutes after the traffic stop did not unreasonably prolong stop so as to render defendant's consent to search invalid); *Hayes v. State*, 292 Ga. App. 724, 731 (2) (e) (665 SE2d 422) (2008) (holding that search initiated ten minutes after officer wrote warning ticket was not the result of an unreasonably prolonged detention).

regarding the city in which they allegedly had most recently stopped and whether they had recently dropped off any hurricane evacuees, as well as the inconsistencies in their driver's log books, provided the deputy with a reasonable, articulable suspicion to continue his detention of Rocha.[17] Accordingly, the trial court did not err in denying Rocha's motion to suppress the drug evidence seized as a result of his consent to search his vehicle.

2. Rocha also contends that the evidence was insufficient to support his conviction, but he concedes that this argument is contingent upon the suppression of the seized cocaine. Given that the trial court did not err in denying Rocha's motion to suppress and that 14.11 kilograms of cocaine with a purity of 66.6 percent was found on the bus he was driving, the evidence was sufficient to support his conviction of trafficking in cocaine.[18]

---

[17] *See Matthews*, 294 Ga. App. at 839 (2) (b) (holding that the officer's inability to find information on vehicle's passenger, who was much younger than defendant, and inconsistencies in passenger and defendant's statements provided the officer with a reasonable, articulable suspicion to prolong the traffic stop beyond the time necessary to write a speeding ticket); *Andrews v. State*, 289 Ga. App. 679, 682-83 (658 SE2d 126) (2008) (holding that passenger and defendant's conflicting stories during traffic stop provided reasonable, articulable suspicion to prolong defendant's detention).

[18] *See, e.g.*, *Delavega v. State*, 312 Ga. App. 79, 80 (717 SE2d 681) (2011).

*Judgment affirmed. Ellington, C. J., and Phipps, P. J., concur.*