**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 31, 2013**

# In the Court of Appeals of Georgia

A13A0880. ROGERS v. THE STATE.

BARNES, Presiding Judge.

After a bench trial, the trial court found Anthony Markette Rogers guilty of trafficking in methamphetamine. Rogers appeals, contending that the trial court erred in denying his motion to suppress the methamphetamine because his consent to search was the product of an unreasonably prolonged detention. For the reasons discussed below, we affirm.

"In reviewing a trial court's order on a motion to suppress, we construe the evidence most favorably to uphold the court's findings and judgment." *Humphreys v. State*, 304 Ga. App. 365 (696 SE2d 400) (2010). Construed in that manner, the evidence shows that on the night of March 27, 2007, an officer with the City of Douglasville Police Department was on patrol duty on Interstate 20. The officer was assigned to the F. I. N. D. (Felony Interception and Narcotics Detection) unit and had

conducted "thousands" of traffic stops over the course of his career, including many stops where the occupants were transporting illegal drugs. While parked in a stationary position perpendicular to the highway, the officer saw a vehicle pass his patrol car that failed to maintain its lane. The officer began following the vehicle, observed that it was weaving within its own lane of travel, and initiated a traffic stop.[1]

When the officer approached the passenger side of the stopped vehicle, he noted that there were three occupants – a driver, a front seat passenger, and a rear seat passenger. The officer observed that the driver, later identified as Rogers, appeared nervous and was "moving around quite a bit inside [the] vehicle"; that the front seat passenger also appeared nervous, was sitting "like a statue" in his seat, and was attempting to avoid eye contact; and that the rear seat passenger appeared to be pretending to be asleep. The officer also observed that there were multiple air fresheners "strategically" placed throughout the vehicle,[2] which the officer testified

---

[1] Two backup officers arrived on the scene almost immediately after the vehicle was stopped.

[2] Approximately 11 air fresheners were discovered in the vehicle during the subsequent search.

2

was often an indicator of illegal drug activity.[3] Additionally, the officer testified that he smelled the faint odor of burning or burnt marijuana coming from inside the vehicle, an odor that he was familiar with based on his 10 years of experience as a police officer.

The officer asked Rogers for his license and registration, had him step out of the vehicle, and patted him down for weapons. As the officer explained the reason for the traffic stop and inquired about his travel itinerary, Rogers appeared "excessively" nervous and was shaking and sweating despite the temperature being only about 55 degrees.

At that point, the officer walked back over to the vehicle, where the two passengers remained seated inside. The officer asked the two passengers to produce their driver's licenses and inquired about their travel itinerary. Neither passenger had any form of identification.

After briefly speaking with the passengers, the officer walked back over to where Rogers was standing. While completing a written warning citation for the

---

[3] According the officer, multiple air fresheners are sometimes used in an effort to hide the odor of drugs or to confuse a drug sniffing dog.

traffic violation, the officer asked Rogers for consent to search the vehicle, which he provided.

After receiving Rogers's consent to search the vehicle, the officer had the other two passengers get out of the vehicle and patted them down for weapons. The officer then searched the vehicle and discovered 194.74 grams of methamphetamine hidden in a container under the front passenger seat. No marijuana was found.

Rogers and the two passengers were arrested and charged with trafficking in methamphetamine. Rogers moved to suppress the methamphetamine found in his vehicle, and at the hearing on the motion, the officer testified to the events as set out above. The State also introduced into evidence a recording of the traffic stop made from the video camera mounted inside the officer's patrol car. The trial court denied the motion to suppress, and after a bench trial in which most of the evidence was stipulated to by Rogers, the court found him guilty of the charged offense. The trial court later denied Rogers's motion for new trial, resulting in this appeal.

In his sole enumeration of error, Rogers maintains that the trial court erred in denying his motion to suppress. Rogers does not contest that the officer had articulable suspicion for stopping his vehicle based on his failure to maintain his lane and weaving within his own lane of travel. See *Steinberg v. State*, 286 Ga. App. 417,

4

418-419 (1) (650 SE2d 268) (2007) (failure to maintain lane provides officer with articulable suspicion to justify traffic stop); *Veal v. State*, 273 Ga. App. 47, 50 (614 SE2d 143) (2005) ("The police can stop drivers who engage in erratic driving behavior, even if it is simply weaving within a lane.") (footnote omitted). Rather, he maintains that the officer unreasonably prolonged the traffic stop before requesting and receiving permission to search the vehicle, rendering his consent to search invalid as the product of an illegal detention. We are unpersuaded.

"The officer's purpose in an ordinary traffic stop is to enforce the laws of the roadway, and ordinarily to investigate the manner of driving with the intent to issue a citation or warning." (Citation and punctuation omitted.) *Richbow v. State*, 293 Ga. App. 556, 558 (667 SE2d 418) (2008).

> [T]o pass constitutional muster, the duration of a traffic stop cannot be unreasonably prolonged beyond the time required to fulfill the purpose of the stop. A reasonable time to conduct a traffic stop includes the time necessary to verify the driver's license, insurance, and registration, to complete any paperwork connected with the citation or a written warning, and to run a computer check for any outstanding arrest warrants for the driver or the passengers.

(Citations and punctuation omitted.) *Hall v. State*, 306 Ga. App. 484, 486 (2) (702 SE2d 483) (2010). While conducting these tasks, an officer is authorized to question

5

the driver and passengers and even to "ask . . . questions wholly unrelated to the traffic stop . . . , so long as the questioning does not prolong the stop beyond the time reasonably required to complete the purpose of the traffic stop." (Citations and punctuation omitted.) *Sommese v. State*, 299 Ga. App. 664, 669 (1) (b) (683 SE2d 642) (2009). See *Young v. State*, 310 Ga. App. 270, 272-273 (712 SE2d 652) (2011). Furthermore, as "an extension of the constitutionally valid detention resulting from the traffic stop," an officer can order the driver and passengers out of the vehicle. (Citation and punctuation omitted.) *Sommese*, 299 Ga. App. at 669 (1) (a). See *Maryland v. Wilson*, 519 U.S. 408, 414-415 (117 SCt 882, 137 LE2d 41) (1997); *State v. Williams*, 264 Ga. App. 199, 203 (590 SE2d 151) (2003).

If an officer prolongs the traffic stop beyond the time reasonably required to fulfill the initial purpose of the stop, then the continued detention of the vehicle and its occupants amounts to a second detention. *Richbow*, 293 Ga. App. at 558. For the officer's continued detention of the vehicle and its occupants to be constitutionally valid, the officer must have a reasonable articulable suspicion of other illegal activity. Id. See *Young*, 310 Ga. App. at 272.

Here, the trial court was authorized to find from the facts as set out above that the officer did not unreasonably prolong the duration of the traffic stop before asking

6

Rogers for consent to search his vehicle. There was evidence that only six or seven minutes elapsed from the time that the officer pulled over Rogers's vehicle to when the officer asked Rogers for his consent to search. During that short period of time, the officer had Rogers exit the vehicle and patted him down out of concern for the officer's safety, asked Rogers and the passengers for identification and inquired about their travel, and asked Rogers for consent to search the vehicle while issuing a written warning citation to him, all of which were permissible actions by the officer in conducting the traffic stop. Furthermore, there is no evidence that the officer lengthened the detention simply to coerce Rogers into giving his consent. Under these circumstances, we defer to the trial court's finding that Rogers's detention by the officer was not unreasonably prolonged beyond the time necessary to fulfill the purpose of the traffic stop and that his consent to the search thus was valid. See *Hall*, 306 Ga. App. at 486 (2) ("The Fourth Amendment is not violated when, during the course of a valid traffic stop, an officer . . . requests consent to conduct a search.") (citation and punctuation omitted).

Moreover, even if the officer had prolonged the initial traffic stop beyond the time necessary to fulfill the original purpose of the stop, there was evidence that the officer had a reasonable articulable suspicion of other illegal activity. Specifically,

7

the officer testified that he smelled burning or burnt marijuana coming from inside the vehicle, that Rogers appeared "excessively" nervous, and that the vehicle had multiple "strategically" placed air fresheners, which, taken together, gave the officer a reasonable articulable suspicion of other illegal activity to justify prolonging the duration of the stop. See *Warren v. State*, 314 Ga. App. 477, 482-483 (3) (724 SE2d 404) (2012) (officer had articulable suspicion to prolong traffic stop based on smell of marijuana and defendant's appearance and demeanor); *Richbow*, 293 Ga. App. at 558-559 ("extreme nervousness" and "excessive air freshener," when combined with other material factors, may provide officer with articulable suspicion for continued detention); *Bailey v. State*, 283 Ga. App. 365, 368 (2) (641 SE2d 548) (2006) (officer had articulable suspicion to prolong traffic stop upon smelling marijuana smoke); *Cole v. State*, 254 Ga. App. 424 (1) (562 SE2d 720) (2002) (officer had articulable suspicion to prolong traffic stop based on smell of marijuana and defendant's appearance and demeanor). Thus, Rogers's consent to search was not the product of an unreasonably prolonged detention.

It is true that marijuana was never found in the vehicle and that the officer never asked Rogers or the two passengers about marijuana, factors that Rogers argues call into question the officer's testimony that he smelled burning or burnt marijuana.

But in deciding a motion to suppress, "[t]he trial court sits as the trier of fact," and "[w]e cannot[] . . . usurp the authority of the trial judge to consider such factors as demeanor and other credibility-related evidence in reaching its decision." (Citations and punctuation omitted.) *Humphreys*, 304 Ga. App. at 365. "Stated another way, in the absence of evidence of record demanding a finding contrary to the judge's determination, the appellate court will not reverse the ruling [denying] a motion to suppress." (Citation omitted.) *Richbow*, 293 Ga. App. at 556-557. Because the evidence does not demand a finding contrary to the trial court's determination that the officer had reasonable articulable suspicion justifying the detention in this case, we affirm the court's denial of Rogers's motion to suppress.

*Judgment affirmed. Miller, J., concurs. Ray, J. concurs fully and concurs specially.*

9

# In the Court of Appeals of Georgia

A13A0880. ROGERS v. THE STATE.

RAY, Judge, concurring specially.

Although I concur fully in the opinion by the Majority, I write separately to emphasize my view that the police officer for the City of Douglasville had the right to ask for consent to search the automobile irrespective of the believability of his testimony as to whether he smelled the scent of burnt marijuana. Not only were there significant factors which in totality gave articulable suspicion that there might be criminal behavior, i.e. a driver who appeared nervous and moving about the vehicle, shaking and sweating in 55 degree weather, a passenger sitting "like a statue" and avoiding eye contact, another passenger pretending to be asleep, and multiple air fresheners "strategically" placed throughout the vehicle, but also perhaps more importantly is the fact that the officer asked for consent to search the vehicle before completing the writing of the traffic violation warning and that the stop wasn't that long to begin with, a mere six or seven minutes leading up to the request to search. Clearly, this request was reasonable and constitutionally sound, whether or not he had smelled burnt marijuana coming from the car.