**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**August 27, 2013**

# In the Court of Appeals of Georgia

A13A1267. VALENTINE v. THE STATE.

RAY, Judge.

Following a bench trial, Bobby Gene Valentine was convicted of trafficking in marijuana (OCGA § 16-13-31 (c)). He appeals from that conviction, arguing that the trial court in erred in denying his motions to suppress because the traffic stop leading to his arrest was not supported by reasonable articulable suspicion, because the traffic stop was impermissibly expanded, and because he did not consent to the search of his vehicle. Finding no error, we affirm.

There are three fundamental principles which must be followed when reviewing a motion to suppress.

First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of

a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citation omitted.) *Miller v. State*, 288 Ga. 286, 286 (1) (702 SE2d 888) (2010).

So viewed, the evidence shows that Officer Jay Thompson was qualified during the motion to suppress hearing as an expert in the field of tractor and trailer safety inspection because of his experience owning his own trucking company, training he received from law enforcement and federal agencies, and his hundreds of tractor trailer stops. On March 3, 2011, Officer Thompson was monitoring traffic on Interstate 85 when he initiated a traffic stop of a tractor trailer driven by Valentine because the decal displaying the vehicle's DOT numbers was too small and because the trailer's mud flap was partially ripped. Approaching the vehicle, the officer noticed that the mud flap was torn from the top almost all the way down to the bottom and was held together by a piece of improvised wire. The officer then walked to the passenger door of the tractor trailer's cab and asked to see Valentine's driver's license, insurance information, cab card registration, log book, and bill of lading. Valentine provided the officer with the paperwork he had, but did not know what a

2

cab card registration was; the cab card registration in his possession did not match the vehicle he was driving. Valentine explained that he did not have his most recent bill of lading because he had driven from North Carolina to meet another driver in Texas to swap trailers with him, but that the other driver did not get in touch with him, and that he was driving back to North Carolina. Valentine later explained that he had driven to Texas to see a girl. The officer testified that Valentine was "very nervous" during his interactions.

The officer further testified that his inspection of Valentine's log book showed excessive downtime and that the log book was not properly maintained. The officer questioned Valentine about why his log book revealed a detour to Montgomery, Alabama, and Valentine responded that he made the decision to stop there on his own and that the company that he drove for did not know about the detour. The officer's suspicions were aroused because of this comment and because Valentine had made such a long and expensive trip without the prospect of making any money since the truck was empty of cargo both ways. The officer testified that the "trip made absolutely no sense as far as a typical legitimate truck driver. . . . In all the trucks I've stopped, I simply do not see that kind of a trip and not some kind of load attached."

3

The officer then issued a warning to Valentine for the mud flap and for unsecured equipment he discovered while inspecting the vehicle. After issuing the warning, the officer then asked if there were any drugs or illegal items in the tractor trailer, and Valentine said no. The officer requested consent to search the tractor trailer, and Valentine, who was "[stuttering] pretty intensely," agreed and signed a consent to search form. Four duffel bags and a backpack containing approximately 200 pounds of marijuana were found in the sleeper portion of the truck's cab. Approximately thirty-three minutes had elapsed between the time the traffic stop was initiated and when Valentine signed the consent to search form.

Following a hearing, the trial court denied Valentine's motion to suppress.[1] In two enumerations of error, Valentine contends that the trial court erred in denying his motion to suppress because the officer did not have a "reasonable[,] articulable suspicion of criminal conduct" sufficient to warrant initiating a traffic stop and because the officer illegally detained Valentine beyond the time necessary for the investigation of the violations that served as the basis for the traffic stop, thus rendering Valentine's consent to search the product of an illegal detention.

---

[1] Despite orally denying this motion during the motion to suppress hearing, the trial court did not enter a written order. However, because the trial court did allow the evidence sought to be suppressed in at trial, this appeal is properly before this Court.

4

1. Valentine contends that the trial court should have granted the motion to suppress the evidence because the officer lacked sufficient legal basis to effectuate a traffic stop and because the stop was pretextual. We disagree.

All that is required to initiate a traffic stop is "specific and articulable facts that provide a reasonable suspicion that the individual being stopped is engaged in criminal activity." (Citations omitted.) *Jones v. State*, 291 Ga. 35, 38 (2) (727 SE2d 456) (2012). "A suppression motion arguing that a traffic stop was pretextual necessarily fails where an officer observes the motorist committing even a minor traffic violation." (Footnote omitted.) *Stearnes v. State*, 261 Ga. App. 522, 524 (2) (583 SE2d 195) (2003).

In this case, the officer's testimony revealed that he stopped Valentine's tractor trailer because he noticed that it had a torn mud flap that looked like it "could very easily come off" and potentially hurt a motorist driving behind the tractor trailer, in violation of OCGA § 40-8-7 (a), and because the decal displaying the vehicle's DOT numbers did not comply with regulations set forth in federal regulations requiring the marking to be "readily legible, during daylight hours, from a distance of 50 feet . . . *while [the vehicle] is stationary.*" 49 CFR §390.21 (c) (3).

5

Valentine argues that these reasons were pretextual because the officer testified (1) that he did not personally witness the faulty mud flap cause any dirt, gravel, or debris to be sent into traffic, and (2) because the officer had never seen the tractor trailer in a stationary position and, thus, would be unable to tell whether the vehicle's DOT decal complied with the law. These arguments miss the mark, as they presuppose that the crime must have been committed for the stop to have been valid.

> If the officer acting in good faith believes that an unlawful act has been committed, his actions are not rendered improper by a later legal determination that the defendant's actions were not a crime according to a technical legal definition or distinction determined to exist in the penal statute. It is not the officer's function to determine on the spot such matters as the legal niceties in the definition of a certain crime, for these are matters for the courts. The question to be decided is whether the officer's motives and actions at the time and under all the circumstances . . . were reasonable and not arbitrary or harassing.

(Punctuation and footnote omitted.) *Dixon v. State*, 271 Ga. App. 199, 201-202 (609 SE2d 148) (2005). In the present case, we find that the trial court's conclusion that the officer had a good faith, reasonable belief at the time he initiated the traffic stop that Valentine's tractor trailer violated the law was not clearly erroneous. See *Pollack v. State*, 294 Ga. App. 400, 402 (1) (670 SE2d 165) (2008) ("[s]ince there was

6

evidence to support the trial court's conclusion regarding the basis for the traffic stop, [the defendant's] challenge to the stop affords him no relief") (footnote omitted).

2. Valentine contends that the trial court erred in denying his motion to suppress because the officer detained Valentine "beyond the time necessary for an officer's diligent investigation of the alleged violations that served as the basis for this traffic stop" before receiving and requesting permission to search the vehicle, thus rendering the consent to search invalid as the product of an illegal detention. We are unpersuaded.

"The officer's purpose in an ordinary traffic stop is to enforce the laws of the roadway, and ordinarily to investigate the manner of driving with the intent to issue a citation or warning." (Citation and punctuation omitted.) *Richbow v. State*, 293 Ga. App. 556, 558 (667 SE2d 418) (2008). If an officer prolongs the traffic stop beyond the time reasonably required to fulfill the initial purpose of the stop, then the continued detention of the vehicle and its occupants amounts to a second detention. Id. A reasonable time to conduct a traffic stop includes the time necessary for the officer to check the status of pertinent documents, such as the driver's license, insurance, and vehicle registration. *Young v. State*, 310 Ga. App. 270, 272 (712 SE2d 652) (2011). The law further allows the officer to ask the driver questions unrelated

to the purpose of the valid traffic stop, as long as the questioning does not unreasonably prolong the detention. Id. at 272-273. See *Hayes v. State*, 292 Ga. App. 724, 729 (2) (c) (665 SE2d 422) (2008) ("[A]ny questioning or small talk, of course, prolongs the detention[;] [t]he question is whether the prolongation is reasonable or unreasonable") (footnote omitted). This Court defers to the trial court's determination on the issue of reasonableness "unless the facts are truly egregious." (Footnote omitted.) Id.

After stopping Valentine's tractor trailer, the officer requested from Valentine the relevant paperwork, asked him to step out of the truck, and engaged him in a brief conversation about the purpose of his trip. These actions fell squarely within the officer's lawful authority to conduct a traffic stop. See generally *Salmeron v. State*, 280 Ga. 735, 737 (1) (632 SE2d 645) (2006).

However, in the present case, the officer continued to ask Valentine questions and requested his consent to search the vehicle *after* issuing him a warning. For the officer's continued detention of Valentine to be constitutionally valid, the officer must have a reasonable, articulable suspicion that Valentine was engaged in other illegal activity. *Richbow*, supra. Accord *Young*, supra at 272. To meet this standard, "an officer's investigation during a traffic stop must be justified by specific,

8

articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. Although this suspicion need not meet the standard of probable cause, it must be more than mere caprice or a hunch or an inclination." (Footnote omitted.) *Pollack*, supra at 403 (3).

Even though the officer had prolonged the initial traffic stop beyond the time necessary to fulfill the original purpose of the stop, the information learned by the officer during the course of the traffic stop provided him with a reasonable, articulable suspicion of other illegal activity sufficient to prolong the traffic stop. Specifically, the officer testified that his suspicions were piqued by Valentine's inconsistent descriptions of his route, the inconsistent and noncompliant log books, Valentine's statement that he had taken a "personal" trip to Montgomery, and the fact that he would have wasted a large amount of money by driving his truck from North Carolina to Texas and back with no cargo. See *Rocha v. State*, 317 Ga. App. 863, 867 (1) (733 SE2d 38) (2012) (holding that passenger's and defendant's conflicting stories during the traffic stop and inconsistencies in the driver's log books provided reasonable, articulable suspicion to prolong defendant's detention). Accordingly, the trial court did not err in denying Valentine's motion to suppress drug evidence as a result of his consent to search his vehicle.

*Judgment affirmed. Barnes, P. J., and Miller, J., concur.*