**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 30, 2020**

# In the Court of Appeals of Georgia

A20A1046. WEAVER v. THE STATE.                    DO-036 C

DOYLE, Presiding Judge.

This Court granted William Weaver's application for interlocutory review of the trial court's denial of his motion to suppress incriminating evidence discovered in the course of a traffic stop of his vehicle. On appeal, Weaver argues that the trial court erred by denying his motion to suppress after finding that the officer did not improperly prolong the stop thereby rendering his consent to search invalid. For the reasons that follow, we reverse the order of the trial court.

On appeal from

a ruling on a motion to suppress, we review the trial court's factual findings for clear error and its legal conclusions de novo. In addition, in reviewing such a ruling, an appellate court must construe the evidentiary record in the light most favorable to the trial court's factual findings and

judgment. An appellate court also generally must limit its consideration of the disputed facts to those expressly found by the trial court.[1]

More specifically, the determination of whether a traffic stop was unreasonably prolonged "may often be a fact-intensive determination, [but] it is ultimately a holding of constitutional law that we review de novo."[2]

Viewed in this light, the record shows that an officer made a stop of an SUV pulling a trailer loaded with salvage partial truck bodies. In the dash cam video of the the stop, which was played at the hearing on the motion to suppress, an officer approached the SUV on the passenger side and told the driver, later identified as Weaver, that he had a non-functioning trailer light. While Weaver and the passenger were retrieving their identifications, the officer told Weaver that he would not write a ticket for the violation but wanted him to be aware of the malfunction so he could get it repaired. Approximately two and a half minutes into the stop, the officer radioed dispatch to check Weaver's and the passenger's information. Weaver exited the vehicle to test the trailer lights, and the officer reiterated that "it's not a big deal,"

---

[1] (Punctuation omitted.) *Kennebrew v. State*, 304 Ga. 406, 409 (819 SE2d 37) (2018).

[2] *State v. Allen*, 298 Ga. 1, 4 (2) (7779 SE2d 248) (2015).

turning the discussion to the trailer load and Weaver's plans for it and asking where he got it and where he was taking it. Weaver could not give the name of the individual from whom he purchased the load, explaining that he was hauling the truck bodies for a friend who had already paid for them for use in refurbishing a vehicle. After listening to Weaver's explanation, the officer returned to the passenger while Weaver remained behind the trailer. At that point, approximately five minutes and forty seconds had elapsed, and dispatch radioed the officer with information on the identifications, noting nothing irregular with Weaver's license or registration and only mentioning that the passenger was on probation. Although Weaver's license was good and he had no outstanding warrants, the officer, rather than ending the stop, returning to his cruiser, or telling Weaver he was free to leave, inquired with the passenger about the items on the trailer.

The officer then returned to Weaver, asking again where he acquired the truck bodies. At this point, seven minutes had elapsed, and at least one minute and twenty second had elapsed from dispatch's radio call to the officer. The officer did not tell Weaver he was free to leave. Instead, the officer inquired about a knife Weaver had on his belt, asking whether he had any other weapons, and then requested to pat-down Weaver, who denied having other weapons and consented to the pat-down.

3

The officer then explained to Weaver that his jurisdiction experiences a lot of scrap metal theft, and he asked Weaver if he was aware that his passenger was on probation. They continue to discuss the plans for the automobile parts for a little over a minute. Almost three and a half minutes after receiving the information from dispatch and without telling Weaver he was free to leave — the officer asked Weaver if he was involved in any criminal activity, which Weaver denied. The officer then asked if Weaver had any drugs on his person or in the truck, questioning Weaver as to his possession of a number of individual illegal substances, all of which Weaver denied possessing. The officer stated that Weaver was "moving around a lot," which made him think that there were drugs involved, at which point the officer requested consent to search the vehicle, which Weaver gave. The officer returned to the vehicle and asked the passenger to step out of the SUV, and after patting him down, the officer completed a vehicle search. During the search, the officer found suspected methamphetamine and a glass pipe, for which the officer then placed Weaver under arrest.

Weaver moved to suppress the items found during the search. After a hearing on the motion, the trial court denied Weaver's motion in a cursory order, stating that the officer

4

had reasonable articulable suspicion to execute a traffic stop on [Weaver for the brake light violation]. Once [Weaver] had been stopped, [the officer] asked him for permission to search the vehicle, which [Weaver] granted. Upon searching the vehicle, [the officer] discovered methamphetamine and a glass pipe. The [c]ourt finds that [Weaver] consented to the search of his vehicle and never withdrew his consent. The [c]ourt finds that the initial stop was for a legitimate law enforcement purpose and was not unreasonably lengthened when [the officer] conducted a search of the vehicle with [Weaver's] permission.

Weaver contends that the trial court erred by finding that the officer did not prolong the stop and, thereby, erred when it denied his motion to suppress. We agree.

[T]he State bears the burden of proving that the search of the [vehicle] was lawful, and to carry this burden, the State must show that it was lawful to detain [Weaver after dispatch returned information about his license and registration until the time Weaver gave his consent to search]. . . . [C]laims that an officer illegally prolonged a detention resulting from a traffic stop generally fall into two categories. The first category involves those cases as here where the officer allegedly extended the stop beyond the conclusion of the investigation that warranted the detention in the first place, i.e., whether the officer prolonged the stop after concluding his investigation of the traffic violation. In such cases, courts have generally concluded that even a short prolongation is unreasonable unless good cause has appeared in

5

the meantime to justify a continuation of the detention to pursue a different investigation.[3]

"An officer may continue to detain a driver after the investigation of the traffic violation is complete only if the officer has 'a reasonable, articulable suspicion that the driver was engaged in other illegal activity.'"[4] In this case, the officer continued to question Weaver and his passenger about multiple subjects unrelated to the purpose of the stop even after receiving an answer from dispatch regarding the legality of Weaver's license and registration. Even if the officer's continued questioning of Weaver and the passenger about the scrap metal did not constitute a unreasonable prolongation of the stop, the officer should have ended the stop after he finished his questions as to that matter.[5] Instead, the officer continued to question Weaver about a knife that was plainly visible for the first half of the stop, about other possible weapons, and finally about general criminal activity or drug possession. The

---

[3] (Punctuation omitted.) *Allen v. State*, 348 Ga. App. 595, 597-598 (1) (a) (824 SE2d 50) (2019), quoting *Bodiford v. State*, 328 Ga. App. 258, 261 (1) (761 SE2d 818) (2014).

[4] *Bodiford*, 328 Ga. App. at 267 (2), quoting *Valentine v. State*, 323 Ga. App. 761, 765 (2) (748 SE2d 122) (2013).

[5] See *Bodiford*, 328 Ga. App. at 266 (1).

6

only possible reason for suspicion about drug possession given by the officer is that Weaver was nervous during the stop. But as this Court has explained, mere nervousness is not sufficient to support a reasonable articulable suspicion to extend a stop after completion of the original mission.[6] The officer did not provide, nor did the trial court find, any other facts to support a reasonable articulable suspicion.

> "Accordingly, [the officer] had no basis for prolonging the traffic stop beyond the time reasonably required to complete his investigation of [Weaver]'s traffic violation. The search of [Weaver]'s car, therefore, resulted from an illegal detention. Given this fact, we reverse the order of the trial court and remand the case with direction to grant [Weaver]'s motion to suppress."[7]

*Judgment reversed and case remanded with direction. McFadden, C. J., and Hodges, J., concur.*

---

[6] See id. at 267 (2) ("'nervousness alone cannot provide reasonable suspicion of criminal activity'"), quoting *Bell v. State*, 295 Ga. App. 607, 610 (2) (672 SE2d 675) (2009). See also *State v. Drake*, 355 Ga. App. 791, 795-796 (2) (845 SE2d 765) (2020) ("[T]he mere fact that a person admits that at some point in his past he 'got in trouble' . . . does not provide a basis for suspecting that the person is somehow currently involved in illegal narcotics activity.").

[7] *Bodiford*, 328 Ga. App. at 267 (2).