**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 26, 2012**

# In the Court of Appeals of Georgia

A12A1353. WEEMS v. THE STATE

BARNES, Presiding Judge.

After police discovered more than 28 grams of cocaine in a car driven by Teumbie M. Weems, she was charged with trafficking in cocaine. Weems filed a motion to suppress, arguing that the officer extended the scope of the traffic stop and lacked reasonable suspicion of criminal activity beyond the traffic violation. Following the hearing on the motion, the trial court denied the motion but issued a certificate of immediate review. Thereafter, we granted Weems' application for an interlocutory appeal, and this appeal ensued. For the reasons explained below, we reverse.

In reviewing a trial court's denial of a motion to suppress, we construe the evidence most favorably to uphold the findings and judgment, and we review de novo

the trial court's application of the law to the undisputed facts. *Jackson v. State*, 280 Ga. App. 716 (634 SE2d 846) (2006). Additionally, we adopt the trial court's findings on disputed facts and credibility unless they are clearly erroneous. Id. at 716-717.

So viewed, the evidence shows that on December 14, 2010, a police officer with the K-9 unit of the Henry County Police Department stopped a vehicle being driven by Weems. The officer testified that he observed that there was less than a car length between Weems' car and the car in front of her. The officer testified that he was concerned because the speed limit on the road was 70 miles an hour, and "at speeds of 72 miles an hour [the speed at which Weems was driving]. . . traveling that close to another vehicle . . . could be a safety issue on the interstate."

After making the stop, the officer approached the passenger side of the vehicle and talked to Weems, and her passenger, co-defendant Keith Walters, who was also the purported owner of the car. The officer explained the reason for the stop, and the videotape of the stop reflects that at approximately two minutes into the stop, he told Weems that he was not going to give her a citation, but would write her a courtesy warning. The officer asked Weems to step out of the car and walk with him to his patrol car to get his warning book. The two remained near the officer's patrol car as he wrote the citation. The officer questioned Weems about where she lived, where she

was going, whether Walters was her husband, and asked if he had picked her up. Weems responded that she was going Christmas shopping and that Walters had picked her up. She later said that the car belonged to Walters, but that it generally remained at her house and that Walters had come over that morning.

At about five minutes into the stop, the officer appeared to conclude writing the warning and walked back to the car where he asked Walters for the year of the car. The officer then questioned Walters whether he had picked up Weems, where he lived, and about information on his driver's license. After talking with Walters, the officer walked back to Weems and told her that he was going to run both drivers' licenses, but still assured her that she was only getting a warning. At this point, almost nine minutes into the stop, the officer asked Weems if he could search the car. Weems directed the officer to ask Walters because he owned the car. When the officer approached Walters, who was still in the car, he asked Walters if he had narcotics, currency such as "$10,000," or weapons in the car. He then asked Walters if he could search the car while he was waiting on the drivers license information. When Walters did not respond, the officer said he would "take it as a no."

The officer then informed Walters that he was going to conduct a free air search with his dog around the car, asked Walters to step out of the car, and patted

him down. When the officer noticed a bulge in Walters' pocket, Walters informed him that the bulge was about $2,000 in cash.[1] The officers directed Walters to put the money on the front passenger seat. He then conducted the free air search of the automobile and the dog alerted to the area near the front passenger door. The officer recovered a purse from the back of the vehicle that contained $18,000 cash and several baggies containing crack cocaine.

At the hearing on the motion to suppress, the officer testified that he observed certain traits and behaviors from Weems and Walters that led him to suspect criminal activity. He testified that when he questioned Weems her "hands started to shake very quickly, tremendously actually." He also observed that "she kept biting her lower lip," and that she looked at Walters "as if she was waiting for him to say something to her." The officer further testified that he observed that Walters' "carotid artery . . . started to pulsate very rapidly and both of his legs were starting to shake." He testified that "due to their nervous behavior, I requested Ms. Weems [get] out of the vehicle." The officer also testified that he was suspicious because the couple gave conflicting stories about who picked up whom.

---

[1]The amount recovered from Walters was $3,100.

On appeal, Weems contends that the officer tainted the free air search by placing the large amount of cash in the vehicle before walking the K-9 around the vehicle, that the officer impermissibly extended the traffic stop without specific and articulable facts to warrant the detention, and also that the officer impermissibly extended the traffic stop by asking dispatch to run a license check but then ignoring the dispatch's attempt to contact the officer after the completion of the license check.

1. We first consider whether the length of a detention was reasonable, and in doing so "it is appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." (Punctuation omitted.) *Pollack v. State*, 294 Ga. App. 400, 404 (3) (b) (670 SE2d 165) (2008). If a police officer "continues to detain the subject after the conclusion of the traffic stop and interrogates him or seeks consent to search without reasonable suspicion of criminal activity, the officer has exceeded the scope of a permissible investigation of the initial traffic stop." (Citation, punctuation and emphasis omitted.) *State v. Felton*, 297 Ga. App. 35, 37 (676 SE2d 434) (2009). However,

> [i]t does not unreasonably expand the scope or duration of a valid traffic stop for an officer to prolong the stop to immediately investigate and

5

determine if the driver is entitled to continue to operate the vehicle by checking the status of the driver's license, insurance, and vehicle registration. Further, a law enforcement officer conducting a routine traffic stop may request and examine a driver's license and check for outstanding warrants questioning the driver or engaging in "small talk" while verifying the items mentioned above is not a seizure unless the detention is prolonged by the questioning.

*St. Fleur v. State,* 296 Ga. App. 849, 851-852 (1) (676 SE2d 243) (2009).

In the instant case, no apparent reason exists to justify the officer's decision to continue to detain Weems, particularly since he had already written Weems a warning citation before he inquired into other criminal activity. "[O]nce the tasks related to the investigation of the traffic violation and processing of the traffic citation have been accomplished, an officer cannot continue to detain an individual without articulable suspicion." *Faulkner v. State,* 256 Ga. App. 129, 130 (567 SE2d 754) (2002). This Court has held that "[r]easonable suspicion to detain and investigate for illicit drug activity does not arise from nervousness [or] differing statements." *Migliore v. State,* 240 Ga. App. 783, 786 (525 SE2d 166) (1999).

The officer testified that he observed the nervousness at the time Weems got out of the car, yet he did not decide to run her driver's license then, instead the officer continued to write a warning, and did not ask dispatch to check her driver's license

6

until over eight minutes into the stop. There was no other evidence from which the officer could have formed a reasonable and articulable suspicion of other illegal activity. The officer had completed the tasks related to the investigation of the traffic violation of following too closely and had written the courtesy warning. After concluding the investigation related to the stop, to legally expand beyond the original investigation of following too closely and the issuance of the warning, the officer had to show that he had articulable suspicion of other illegal activity. See *Gonzales v. State*, 255 Ga. App. 149, 150 (564 SE2d 552) (2002) (after routine traffic stop has ended, an officer must have either valid consent or reasonable suspicion of criminal conduct before conducting additional questioning). As noted above, nervousness and inconsistent statements are not sufficient.

> If during an investigatory stop the officer, without an articulable suspicion, proceeds to ask questions unrelated to the reason for the stop, the officer goes beyond the permissible scope of the investigation, and the further detention of the car driver exceeds that permitted by *Terry v. Ohio* [392 U.S. 1, 21 (88 S. Ct. 1868, 20 L. Ed. 2d 889) (1968)] and its progeny.

*Almond v. State*, 242 Ga. App. 650, 652 (1) (530 SE2d 750) (2000). "[I]t is not the nature of the question that offends the Fourth Amendment, it is whether in asking the

7

questions the officer impermissibly *detains* the individual beyond that necessary to investigate the traffic violation precipitating the stop." (Punctuation omitted, emphasis in original.) *State v. Mauerberger*, 270 Ga. App. 794, 795 (608 SE2d 234) (2004).

Accordingly, because the officer illegally detained Weems, the order of the trial court is reversed and the case is remanded with direction to grant Weems' motion to suppress.

2. Weems' remaining enumerations are moot.

*Judgment reversed. Adams and McFadden, JJ., concur.*