**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 25, 2014**

# In the Court of Appeals of Georgia

A14A0012. THE STATE v. TERRELL.                                DO-001 C

DOYLE, Presiding Judge.

The State appeals from the trial court's order granting Michael Cody Terrell's motion to suppress evidence found after a traffic stop. The State contends that the trial court erred by finding that consent to search the vehicle was obtained after police unreasonably prolonged the detention during the traffic stop. For the reasons that follow, we reverse.

[There are] three fundamental principles which must be followed when conducting an appellate review of a trial court's ruling on a motion to suppress. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the

trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. These principles apply equally whether the trial court ruled in favor of the State or the defendant.[1]

To the extent that "the evidence at a suppression hearing is uncontroverted and the credibility of witnesses is not in question, we conduct a de novo review of the trial court's application of the law to the undisputed facts."[2]

The record is essentially undisputed and shows that an officer on patrol received a radio communication from an investigator who identified a particular vehicle as being suspected of drug activity and asked if the officer could observe a reason to justify a traffic stop of the vehicle. The officer located the vehicle and noticed a crack in the windshield sufficient to partially obstruct the driver's view.[3]

---

[1] (Punctuation and citations omitted.) *Brown v. State*, 293 Ga. 787, 802-803 (3) (b) (2) (750 SE2d 148) (2013), quoting *Miller v. State*, 288 Ga. 286, 286-287 (702 SE2d 888) (2010).

[2] *Jones v. State*, 291 Ga. 35, 36-37 (1) (727 SE2d 456) (2012), citing *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

[3] The driver testified at the suppression hearing and did not dispute having a cracked windshield. See OCGA § 40-8-73 (e) ("No motor vehicle shall be operated with a windshield or rear window having a starburst or spider webbing effect greater than three inches by three inches.").

2

The officer initiated a traffic stop, and the vehicle pulled into a Phillips 66 gas station.[4] The vehicle was driven by Kelsey Lambert, and Terrell was in the passenger seat. As a backup officer arrived, the first officer requested Lambert's driver's license and took it back to his patrol car to run a check on it approximately one minute later. As the license check proceeded, the officers discussed how they might obtain consent to search the vehicle. Approximately three minutes after the stop began, the license check was complete, and after forty seconds of further discussion between the officers, an officer began writing out a warning citation for the cracked windshield. As that officer wrote the warning, the backup officer approached Lambert's vehicle and asked Terrell for his identification, which Terrell provided, telling the officer he was on parole for a drug violation.[5] The officer radioed dispatch with Terrell's

---

[4] The fact that a traffic stop arises pursuant to an underlying drug investigation does not render the stop invalid if "an officer observes the motorist committing even a minor traffic violation," such as the cracked windshield in this case. *Valentine v. State*, 323 Ga. App. 761, 763-764 (1) (748 SE2d 122) (2013). See also *State v. Price*, 322 Ga. App. 778, 780 (746 SE2d 258) (2013) ("If an officer witnesses a traffic violation, the ensuing stop is never pretextual, regardless of the officer's subjective intentions.").

[5] The State did not introduce evidence of a Fourth Amendment waiver arising from Terrell's parolee status, but it did introduce a copy of his sentence, which Terrell was still serving and which contained a provision requiring Terrell to submit to searches without probable cause or reasonable suspicion. See generally, *Thomas v. State*, 287 Ga. App. 163, 166 (1) (651 SE2d 116) (2007) (discussing searches

3

identification to run a check on the Georgia Crime Information Center ("GCIC") database. After that process was complete[6] (approximately two minutes later), the first officer returned to Lambert's vehicle to give her the written warning. He requested her to exit her vehicle so he could explain the citation to her and get her signature. After returning her license, the officer told Lambert she was free to go and then immediately asked her for consent to search the vehicle. Lambert responded that she had somewhere to be, but after the officer replied that it would only take "five minutes at the most,"[7] she agreed to the search of her vehicle. Up to that point, the entire stop had taken approximately ten to eleven minutes. Lambert asked if she could

---

pursuant to parole and probation waivers). Nevertheless, the trial court ruled that the search was fruit of the unlawful detention and the officers did not perform the search pursuant to a Fourth Amendment waiver associated with Terrell's sentence or parolee status. On appeal, the State makes no argument as to the error of this ruling, so we do not address the effect of the waiver in Terrell's prior drug sentence or his status as a parolee at the time of the search. See generally Court of Appeals Rule 25 (c) (2) (unsupported claim of error may be deemed abandoned); *Barrett v. State*, 253 Ga. App. 357, 360 (3) (559 SE2d 108) (2002) (enumeration of error not supported by argument or authority was deemed abandoned).

[6] The officer can be heard on the recording of the stop ruling out a similarly named entry in the GCIC database.

[7] Based on the video, the vehicle search took less than six minutes.

4

go into the gas station to purchase some cigarettes, and the officers reiterated that she was free to go.

Thereafter, before the vehicle search began, an officer requested Terrell to exit the vehicle, and he did, throwing a styrofoam "QuikTrip" cup into a nearby trash can. The officer patted down Terrell and discovered several small plastic baggies in his pocket but no contraband. The brief vehicle search also failed to yield any contraband, and the officers concluded their engagement with Terrell and Lambert, who stayed at the gas station chatting and smoking cigarettes. After the first officer left the scene, the backup officer remained in his patrol car, which he had moved from the immediate scene and backed into a parking space. He sat in his patrol car and observed Terrell and Lambert as they lingered at the gas station. After approximately five or ten more minutes, Lambert and Terrell drove away, and the backup officer searched the trash can into which Terrell had thrown the QuikTrip cup. He located the cup and saw a glass pipe and several baggies of suspected methamphetamine inside. Terrell was later apprehended and charged with one count of trafficking in methamphetamine.[8]

---

[8] OCGA § 16-13-31 (e).

Terrell moved to suppress the evidence gathered during the pat-down search and from the trash can, and after an evidentiary hearing, the trial court granted the motion on the ground that the officer obtained consent to search the vehicle after unreasonably prolonging the traffic stop, rendering any evidence obtained thereafter "fruit of the poisonous tree."[9] At the hearing, the trial court stated as follows:

> The Court had the benefit of a video tape, it had a time stamp on it that showed the traffic stop as it played out from beginning to end. The traffic stop[,] however, in this Court's opinion, based on the facts and evidence presented here[,] exceeded the scope in detaining the driver and the Defendant past the time when the . . . traffic citation warning was given to the driver at the scene. *I believe on the tape that was somewhere around the ten-minute mark, ten-minute thirty mark. At that point in time it's clear that the officer had no legal reasons to keep the driver there.* There was no other independent articulable suspicion of illegal activity other than the initial traffic stop at that point in time, and

---

[9] The fact that Terrell threw his cup into the trash does not create an abandonment such that we need not engage in a Fourth Amendment analysis of the traffic stop. See generally *Watson v. State*, 247 Ga. App. 498, 499 (544 SE2d 469) (2001) (the "constitutional protection of the Fourth Amendment does not apply to property which has been abandoned."). "[I]f unlawful police conduct coerces the defendant into abandoning the property, then suppression of the evidence may be warranted." *Edwards v. State*, 239 Ga. App. 44, 45 (1) (518 SE2d 426) (1999). The evidence shows that the police removed Terrell from the vehicle *after* the conclusion of the traffic stop *so* they could perform the consensual search; thus, if the consent was unlawfully obtained, Terrell's abandonment would have been fruit of the unlawful search.

the driver and the Defendant should have been free to leave at that point. At that point, however, the officers asked for consent to search the vehicle after the driver's license was given back and the warning citation was done. They asked for consent to search from the driver, who upon testimony gave a consent to search her vehicle. Unfortunately[,] that consent to search came after the driver and the passenger were illegally detained and *there . . . was no articulable suspicion of any criminal activity warranting a request for consent to search*.[10]

The trial court relied on *Weems v. State*,[11] in which this Court reversed the denial of a motion to suppress evidence obtained pursuant to a search after a traffic stop. In *Weems*, the officer executed a traffic stop and spoke to Weems as he wrote out a courtesy warning for following too closely.[12] After finishing writing the warning, the officer prolonged the detention by further asking a passenger questions about the vehicle, "whether he had picked up Weems, where he lived, and about information on his driver's license."[13] The officer then told Weems he was going to do a check on both of their drivers' licenses, and at that point, the officer asked for

---

[10] (Emphasis supplied.)

[11] 318 Ga. App. 749 (734 SE2d 749) (2012).

[12] See id. at 750.

[13] Id.

7

consent to search the vehicle.[14] Weems deferred to the passenger, who did not respond to the request.[15] The officer then informed the passenger that he was going to conduct a free air search with a dog and asked the passenger to exit the vehicle, and the officer patted down the passenger.[16] The officer noticed a bulge in the passenger's pocket, and the passenger informed him that it was $2,000 in cash.[17] The officer told the passenger to place the cash on the front passenger seat and then performed a free air search with the police dog; the dog alerted on an area of the car near where the cash was placed.[18] The officer then searched the vehicle and found $18,000 in cash and several baggies of crack cocaine in the back of the vehicle.[19]

Based on these facts, this Court held that there was no valid reason to continue to detain Weems and the passenger after the completion of the written warning: "The officer had completed the tasks related to the investigation of the traffic violation of

---

[14] See id.

[15] See id.

[16] See id.

[17] See id.

[18] See id. at 750-751.

[19] See id.

following too closely and had written the courtesy warning," yet the officer continued to detain the suspects for several more minutes while he questioned them, patted down the passenger, and completed a drug dog search.[20] Therefore, this Court held that the trial court erred by denying Weems's motion to suppress because the officer lacked sufficient suspicion at the conclusion of his authorized duties.[21]

The present case, however, presents a different factual scenario not controlled by *Weems*. Here, as noted by the trial court, the officer completed the tasks related to the investigation of the traffic violation and returned Lambert's license to her in approximately ten minutes.[22] At that point, upon returning Lambert's license and telling her she was free to go, the officer "immediately"[23] requested consent to search Lambert's vehicle, and as found by the trial court, Lambert consented. At that

---

[20] See id. at 752 (1).

[21] See id. at 752-753.

[22] We note that requesting Lambert to exit her vehicle to discuss and sign the warning was permissible as part of the traffic stop. See *Sims v. State*, 313 Ga. App. 544, 547-548 (722 SE2d 145) (2012) (During a traffic stop, "[t]he officer was . . . authorized to ask [the defendant] to step outside his car; 'ordering [the defendant] from the car was an extension of the constitutionally valid detention resulting from the traffic stop.'") (footnote omitted).

[23] The trial court explicitly found that the officer "immediately" requested consent to search after returning the license to Lambert.

9

moment, Lambert's license had been returned, she had been told she was free to leave, and the encounter had de-escalated into a first-tier encounter.[24] "[Because] the request to search occurred . . . contemporaneously with the conclusion of the traffic stop, it did not unreasonably prolong the stop."[25] Therefore, the facts here differ from *Weems*, which merely stands for the proposition that an officer may not, after concluding an otherwise valid traffic stop, *continue to detain* a person without reasonable articulable suspicion. Here, under the facts as found by the trial court, the detention related to the traffic stop had ended, and the immediate request to search did not prolong the detention or otherwise violate the principle articulated in *Weems*.[26] Accordingly, the trial court erred by ruling that Lambert's consent was

---

[24] See *Rowe v. State*, 314 Ga. App. 747, 750 (2) (a) (725 SE2d 861) (2012) ("Upon receiving [her] license and warning ticket, a reasonable person would have concluded that the traffic stop had ended.").

[25] *Davis v. State*, 306 Ga. App. 185, 187 (1) (702 SE2d 14) (2010), citing *Davis v. State*, 303 Ga. App. 785, 787 (694 SE2d 696) (2010); *Hayes v. State*, 292 Ga. App. 724, 730 (2) (e) (665 SE2d 422) (2008) (officer's request for consent to search 30 seconds after issuing a warning ticket did not unreasonably prolong the detention).

[26] We note in particular that the trial court's statement at the hearing, "there . . . was no articulable suspicion of any criminal activity *warranting a request for consent* to search," implies a misapplication of the law. See generally *Bacallao v. State*, 307 Ga. App. 539, 541-542 (705 SE2d 307) (2011) (even if police have no basis for suspecting a particular individual, they may generally ask questions of that individual and request consent to search as long as the police do not detain the person

10

obtained after an unlawful detention. Based on this legal error, we reverse the grant of Terrell's motion to suppress.

*Judgment reversed. Miller, J., concurs specially and Dillard, J., concurs in the judgment only.*

---

or convey a message that compliance with their requests is required).

# In the Court of Appeals of Georgia

A14A0012. THE STATE v. TERRELL.                          MI-001C

MILLER, Judge, concurring specially.

I agree with the ultimate conclusion reached by the majority, but write separately to note that once Terrell abandoned the drugs, he no longer had any reasonable expectation of privacy in them.

It is well settled that the "constitutional protection of the Fourth Amendment does not apply to property which has been abandoned." (Footnote omitted.) *Watson v. State*, 247 Ga. App. 498, 499 (544 SE2d 469) (2001); see also *Teal v. State*, 282

Ga. 319, 328-329 (6) (647 SE2d 15) (2007) (accused no longer has reasonable expectation of privacy in property that is abandoned). "However, if unlawful police conduct coerces the defendant into abandoning the property, then suppression of the evidence may be warranted." *Edwards v. State*, 239 Ga. App. 44, 45 (1) (518 SE2d 426) (1999) (abandonment not coerced where police conduct is lawful).

Here, once the traffic stop had concluded, police officers contemporaneously asked for and received permission from the vehicle's driver to search the car. See *Davis v. State*, 306 Ga. App. 185, 186-187 (1) (702 SE2d 14) (2010) (no illegal detention where police asked to search vehicle almost contemporaneously with conclusion of traffic stop). Prior to searching the car, police were entitled to ask Terrell to step out of the vehicle. See *Brandt v. State*, 314 Ga. App. 343, 346 (723 SE2d 733) (2012) (police may ask passenger to exit the vehicle). Throughout the entirety of the stop the officers' actions were legitimate and lawful.

After Terrell exited the vehicle, he threw away into a nearby trash can a "QuickTrip" cup containing several baggies of suspected methamphetamine. There is no evidence that police officers coerced Terrell into throwing away the cup and its contents in a public trash can. Consequently, Terrell abandoned his property, and no longer had any reasonable expectation of privacy in it. The police officers' recovery

2

of the cup did not implicate the Fourth Amendment. Accordingly, the trial court erred

in granting Terrell's motion to suppress.