McMlLLIAN, Judge,
dissenting.
I respectfully dissent because I believe that the majority improperly focuses on the officer’s testimony to conclude that the stop was completed at the time he contacted dispatch to run the computer check. In doing so, the majority applies an overly formulaic test and mistakenly ignores the objective facts surrounding the stop. While I agree that credibility determinations made by a trial court must be accepted unless clearly erroneous, I find that the controlling facts in this case are undisputed because they are plainly discernible from the patrol car-mounted video recording, and this Court should therefore review those facts de novo. See Johnson v. State, 299 Ga. App. 474, 474-475 (682 SE2d 601) (2009). Moreover, even if I were persuaded by the majority’s characterization of the officer’s testimony, “[t]he officer’s subjective belief that he lacked authority to detain [defendants] for continued investigation does not control where the facts objectively show the officer had such authority.” Cole v. State, 254 Ga. App. 424, 426 (2) (562 SE2d 720) (2002).
Here, the recording clearly shows that the stop had not yet been completed. Approximately seven minutes after the camera began recording, Officer Jackson returned to the front passenger window to ask Allen for his current address to include on the written warning. One minute later, he returned to the front of his patrol car where Scott was waiting and continued writing the warning and answered additional questions from Scott. While still speaking with Scott about the nature of the warning and with the warning still in his hand, Officer *420 Jackson contacted dispatch via the radio on his lapel to ask for a computer check of Scott’s license and Allen’s identification card.
It is well-established law that a valid traffic stop
includes the time necessary to verify the driver’s license, insurance, registration, and to complete any paperwork connected with the citation or written warning. A reasonable time also includes the time necessary to run a computer check to determine whether there are any outstanding arrest warrants for the driver or the passengers.[36]
(Citations omitted; emphasis in original.) Matthews v. State, 294 Ga. App. 836, 838 (2) (670 SE2d 520) (2008). Moreover, I am not aware of any controlling authority that would require officers to initiate a computer check at a specific point within a valid, ongoing traffic stop. Nor am I aware of any authority that would require an officer to proceed in the most expeditious manner possible, as determined by a court after the fact.
Rather, as the United States Supreme Court has cautioned,
[a] creative judge engaged in post hoc evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But the fact that the protection of the public might, in the abstract, have been accomplished by “less intrusive” means does not, by itself, render the search unreasonable.
(Citations and punctuation omitted.) United States v. Sharpe, 470 U.S. 675, 686-687 (II) (B) (105 SCt 1568, 84 LE2d 605) (1985). In United States v. Brigham, the en banc Fifth Circuit emphasized that “[tjhere is... no constitutional stopwatch on traffic stops” and, noting the Fourth Amendment touchstone of reasonableness, declined to impose a particular sequence or constitutionally mandated protocol on questioning and computer checks during traffic stops. 382 F3d 500, 511 (5th Cir. 2004).
As the majority notes, our Supreme Court recently provided additional guidance on this very issue in Rodriguez v. State, 295 Ga. 362 (761 SE2d 19) (2014). The Court explained that there are two different types of claims that a detention was unreasonably prolonged —those in which a detention is allegedly prolonged beyond the *421 conclusion of the investigation that warranted the detention and those in which the investigation itself purportedly took too long. Id. at 369 (2) (b). In rejecting Rodriguez’s claim that her detention was prolonged beyond the conclusion of the officer’s investigation into the reason for the stop, the Court found that, although he may have gathered some information that might have dispelled the original impetus for the stop, “the officer had done or said nothing at that point to indicate to the women that his investigation of [the reason for the stop] was concluded.” Id. at 370 (2) (b).
Turning to the second type of prolonged detention, the Court emphasized that, although the length of the prolongation is not itself dispositive, the officer’s additional actions prolonged the detention for only a couple of minutes at most. Rodriguez, 295 Ga. at 371 (2) (b). “So long as an officer pursues his investigation with reasonable diligence, the Fourth Amendment is not offended.” Id. (“[T]he police are not constitutionally required to move at top speed or as fast as possible. At a traffic stop, the police can occasionally pause for a moment to take a breath, to think about what they have seen and heard, and to ask a question or so.”) (citation and punctuation omitted).
Here, although Officer Jackson may have completed the physical writing of the warning, as in Rodriguez and unlike in Weems v. State, 318 Ga. App. 749 (734 SE2d 749) (2012) the traffic stop had not yet concluded. See Rodriguez, 295 Ga. at 371 (2) (b), n. 13 (“ ‘Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave.’ ”) (quoting Arizona v. Johnson, 555 U.S. 323, 333 (II) (B) (129 SCt 781, 172 LE2d 694) (2009)). Officer Jackson had inquired and obtained identity information from Allen and Scott prior to writing up the warning, and as he was finishing the warning, the video shows that Officer Jackson called in the identification information that he had previously obtained. Therefore, the stop was not prolonged beyond the conclusion of Officer Jackson’s investigation into the stop.
Nor was the investigation itself unreasonably long. The record shows that at the time Officer Jackson’s K-9 alerted to the presence of narcotics, the stop had been extended by only three minutes. See Rodriguez, 295 Ga. at 373 (2) (b) (noting with approval an Eleventh Circuit case holding that a request for criminal histories as part of a routine computer check is justified for officer safety and that such a check is reasonable even if it extends the stop for three minutes beyond what was necessary to complete the investigation that justified the stop).
Based on the totality of the circumstances and the particular facts of this case, I do not find Officer Jackson’s actions to be *422 unreasonable or that he unlawfully detained Appellees. See Young v. State, 310 Ga. App. 270, 273-274 (712 SE2d 652) (2011) (finding no unlawful detention where officer’s sequence of actions were to first request relevant paperwork, ask the driver to step out of the vehicle, engage him in conversation, and then request a K-9 unit before contacting dispatch to run a computer search on the driver’s and passenger’s criminal histories); Hall v. State, 306 Ga. App. 484, 486 (2) (702 SE2d 483) (2010) (because the officer requested consent to search before he received verification on the driver’s license, the request for consent occurred before the purpose of the traffic stop was fulfilled); see also Bowens v. State, 276 Ga. App. 520, 521 (623 SE2d 677) (2005) (traffic stop was not prolonged by the dog’s free air search where the stop was still in progress because the officer was running a computer check on the driver’s license and registration). I would therefore reverse the judgment of the trial court granting the Appellees’ motion to suppress.
Decided July 16, 2014 —
James L. Wright III, District Attorney, Jordan K. Van Matre, Assistant District Attorney, for appellant.
Christina M. Kempter, William C. Puckett, Jr., Veal & Lamar, Holly W. Veal, for appellees.
I am authorized to state that Presiding Judge Andrews and Judge Ray join in this dissent.

 Unlike the majority, I am not persuaded that a computer check must be directly related to the reason for the investigative stop in order to find that continued detention is warranted to complete the check.