**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 9, 2016**

# In the Court of Appeals of Georgia

A15A1966. JACKSON v. THE STATE.

RAY, Judge.

Kerry Montel Jackson was charged with one count of trafficking in marijuana in violation of the Georgia Controlled Substances Act. Following a bench trial, he was found guilty and sentenced to 25 years, with the first 12 to be served in confinement. Prior to trial, Jackson filed a motion to suppress, which was denied. Jackson now appeals the denial of his motion for new trial, arguing that the traffic stop which uncovered the marijuana was unduly prolonged and, as such, that the search was unlawful. Finding no error, we affirm.

"On appeal from a denial of a motion to suppress, this Court must construe the evidence most favorably to uphold the ruling of the trial court. The trial court's application of law to facts which are undisputed is subject to de novo review."

(Footnote and punctuation omitted.) *Matthews v. State*, 330 Ga. App. 53, 53 (766 SE2d 515) (2014). "[W]hen a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. . . [T]he trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous." (Citation omitted.) *Perez v. State*, 249 Ga. App. 399, 399-400 (547 SE2d 699) (2001).

So viewed, the record shows that Jackson was stopped by Deputy Whitehead for a routine traffic stop the morning of October 4, 2012. Jackson's vehicle drifted across the fog line on an exit ramp from I-20, in violation of OCGA § 40-6-48. Due to the congested nature of the area, Deputy Whitehead followed Jackson without activating his lights while he waited for dispatch to run the vehicle's license plate. Deputy Whitehead activated his lights at 7:59 a. m. upon arriving in a location where the stop would be less disruptive to the local community.

After informing Jackson of the reason for the stop, Deputy Whitehead returned to his patrol car to run Jackson's license and criminal history. Deputy Whitehead made the decision to issue a warning after Jackson's license came back valid, and at 8:06 a. m., he returned to Jackson's vehicle to begin the process of writing out the warning, even though the criminal history had not yet returned.

During the traffic stop, Deputy Whitehead and Jackson engaged in a conversation. Jackson stated that he exited the highway to get gas, that he had half a tank of gas, and that he was on his way back to Alabama. When asked why he wasn't waiting until Alabama to get the gas since it would be cheaper in Alabama, Jackson indicated it was because he had a debit card. Also, he had already passed the only gas station at the exit when he was stopped and was making no effort to turn around. To explain why he was so far away from home, Jackson initially told Deputy Whitehead that he was in Georgia to attend a car auction, but that he had to go back to Alabama to pick up drivers for the cars. Eventually, his story changed to being in Georgia overnight because he had spent the night with "a girl" and was heading back to Alabama to get home to his "old lady." When asked about where the girl lived and where he had spent the night, Jackson was unable to provide any details.

Jackson's criminal history came back at 8:12 a. m. , at which time the deputy had yet to finish writing the warning. Jackson's criminal history indicated that he was previously charged with drug trafficking.[1] Deputy Whitehead then asked Jackson whether he had ever been arrested, to which Jackson initially responded negatively.

---

[1] Deputy Whitehead testified at the hearing he was informed of Jackson's criminal background by another officer who was at the scene, but that officer did not testify. The trial court merely describes him as "another officer".

3

When pressed, Jackson admitted to having been arrested when he was "younger" for "drinking," but he denied any other arrests.

Officer Williams, a member of the City of Douglasville Police Department Canine Unit, was on his way to work when he saw Deputy Whitehead engaged in the traffic stop. As a courtesy in the event Deputy Whitehead needed assistance, Officer Williams pulled over and parked across the street from Deputy Whitehead. Officer Williams had with him his trained drug detection dog.

After Jackson lied about his criminal history, Deputy Whitehead asked Jackson for consent to search the vehicle Jackson denied consent. Thus, at Deputy Whitehead's request , Officer Williams began walking his drug dog around Jackson's vehicle , and it alerted to the presence of narcotics. Jackson's vehicle was subsequently searched and approximately 20.9 pounds of marijuana was found in the trunk of the vehicle.

In his sole enumeration of error,[2] Jackson maintains that the trial court erred in denying his motion to suppress because the traffic stop allegedly was unduly prolonged; he contends that the stop was completed when Deputy Whitehead

---

[2] Jackson does not challenge the lawfulness of the initial traffic stop for failure to maintain lane.

informed him that his license had come back valid and that the Deputy was just going to issue a warning. Jackson cites for this proposition to the Supreme Court's recent decision in *Rodriguez v. United States*, ___ U. S. ___ (135 SCt 1609, 191 LE2d 492) (2015) ("a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures...it becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation").

The trial court found that the search was constitutionally permissible for two reasons. First, it found that "Deputy Whitehead's questioning of [Jackson] prolonged the stop[,] but did not do so unreasonably."(emphasis omitted.) Additionally, it concluded that "[Jackson]'s answers to [Deputy Whitehead's] questions provided immediate reasonable suspicion to detain [Jackson] further." In essence, the trial court concluded that Jackson's inconsistent answers as to why he was in Georgia and where he had been, that he was searching for gas when he did not need any gas and given that gas was cheaper in Alabama where he was headed, as well as his lies about his criminal background, provided reasonable suspicion so as to elevate Jackson's detection to a second tier encounter.

Contrary to Jackson's assertion, the traffic stop's mission did not conclude at the time Deputy Whitehead informed Jackson that he was merely going to issue a warning. In *State v. Allen*, 298 Ga. 1, (779 SE2d 248, 258-259) (2015), our Supreme Court found that a traffic stop was not unduly prolonged where an officer had his dog conduct a free air sniff of a vehicle while waiting for the completion of the records check on a passenger in the vehicle. "[W]hen an officer lawfully stops and detains an individual for a brief investigation . . . the officer is entitled to take reasonable steps to make the scene safe for his investigation." (Citation omitted.) *Rodriguez v. State*, 295 Ga. 362, 372 (2) (b) (761 SE2d 19) (2014). These steps generally include checking for outstanding warrants and the criminal history of the occupants of the stopped vehicle, as this enhances officer safety, and until these checks are completed, there can be no undue prolongation of the traffic stop. Id.[3] Thus, at the minimum, the relevant time at issue is not when Deputy Whitehead informed Jackson that he was going to issue a warning, but rather was when Jackson's criminal history check returned. While Deputy Whitehead informed Jackson that he was going to write a

---

[3] We recognize, of course, that the overall duration of the traffic stop must be reasonable in light of the circumstances. *Allen*, supra at 258. However, no argument was pursued in this appeal that the overall length of the traffic stop was unreasonable, and, upon review of the facts, we don't believe that the duration of the stop was excessive.

6

warning at 8:06 a. m.,[4] Jackson's criminal history check was not completed until 8:12 a. m.

The trial court found that "[Jackson]'s answers to [Deputy Whitehead's] questions provided immediate reasonable suspicion to detain him further." The trial court further found that "in the context of the officer's experience and the nature of the surrounding area[,] that [Jackson] was behaving suspiciously."[5]

We believe that, at the very least, that Jackson's inconsistent answers as to why he was in Georgia, his inability to recall the location where he had been, his statement that he was exiting the interstate to get gas despite that he had plenty of gas and that gas was cheaper in his home state of Alabama, and the fact that he had passed the only gas station at the exit when he was stopped, considered in totality, provided reasonable articulable suspicion sufficient to allow Deputy Whitehead to broaden his investigation beyond a simple traffic offense. See *Rocha v. State*, 317 Ga. App. 863,

[4] Additionally, a traffic stop does not conclude until the officer completes any "paperwork connected with the citation or a written warning." (Citation omitted.) *Rogers v. State*, 323 Ga. App. 647, 649 (747 SE2d 213) (2013).

[5] Although there is nothing in the record to explain what the trial court meant by relying on the nature of the surrounding area, "local factors within the knowledge of the trial court may influence a decision about the reasonableness of the stop." *Hayes* supra at 730. Thus, we will defer to the trial court's reasoning, even though we cannot directly see into its analysis.

7

867 (1) (733 SE2d 38) (2012); *Matthews v. State*, 294 Ga. App. 836, 839 (1) (b) (670 SE2d 520) (2008). This was enhanced when the criminal background check revealed Jackson's previous drug trafficking charge, and, even further, when he lied about his criminal record. See *Sherod v. State*, 334 Ga. App. 314 (779 SE2d 94) (2015). Thus, we believe that Jackson's continued detention to allow the drug dog to do a "free air" sniff around of his automobile passes constitutional muster. Accordingly, we therefore affirm the trial court's denial of the motion to suppress.

*Judgment affirmed. Barnes, P. J., and Rickman, J., concur.*