**FOURTH DIVISION**
**MERCIER, C. J.,**
**DILLARD, P. J., and LAND, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 19, 2025**

# In the Court of Appeals of Georgia

A25A0160. STATE v. DEAN.

DILLARD, Presiding Judge.

The State appeals from the grant of a motion to suppress evidence discovered during a traffic stop of Nicholas A. Dean's vehicle. The State argues the trial court erred in finding this stop was extended without reasonable articulable suspicion to conduct a free-air search. Because we agree with the State, we reverse.

When considering the denial of a motion to suppress, we view the evidence "in favor of the court's ruling, and we review de novo the trial court's application of the law to undisputed facts."[1] Even so, we may consider facts that "definitively can be

---

[1] *Shumate v. State*, 372 Ga. App. 807, 807 (906 SE2d 885) (2024) (punctuation omitted); *see Quint v. State*, 367 Ga. App. 339, 341 (886 SE2d 1) (2023) ("In reviewing the trial court's ruling on a motion to suppress, we generally must (1) accept a trial court's findings unless they are clearly erroneous, (2) construe the evidentiary record

ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility, such as facts indisputably discernible from a videotape."[2] So viewed, the record shows that on January 18, 2021, Sergeant Adam Pendelton of the Peachtree City Police Department observed Dean driving without a seatbelt or license plate; and so he initiated a traffic stop of the truck for those reasons. When Pendelton approached the passenger-side door of the vehicle, Dean informed him that neither the door nor window on that side was operational.[3] Pendelton then approached the driver's side, where Dean provided the documents requested by Pendelton through a small triangular vent window on the door—indicating that the main driver's side window could not open.

During his approach and interaction with Dean, Sergeant Pendelton detected the strong scent of an aerosol air freshener, which led him to believe the interior of the

---

in the light most favorable to the factual findings and judgment of the trial court, and (3) limit its consideration of the disputed facts to those expressly found by the trial court." (punctuation omitted)).

[2] *McNeil v. State*, 362 Ga. App. 85, 85 (866 SE2d 249) (2021) (punctuation omitted).

[3] Because the truck was an older model, the windows were operated by hand cranks.

vehicle was recently sprayed. As a result, Pendelton began to consider the potential presence of marijuana because of previous incidents involving the use of aerosol air freshener to conceal the odor of marijuana in vehicles.

Due to the truck's proximity to the roadway and concern for officer safety, Sergeant Pendelton asked Dean to exit the vehicle and stand near the patrol car while he reviewed the requested documents—which included a recent bill of sale.[4] Pendelton also checked the vehicle's VIN, ran criminal checks, and then issued a citation. Importantly, Pendelton made this request several times before Dean eventually complied. And while working on the computer in his patrol car to review the produced documents, Pendelton told Dean that (in his experience) people who do not want to exit a vehicle or roll down the windows typically do so to prevent an officer from detecting the odor of marijuana.

Just after Sergeant Pendelton began writing the citation, another law-enforcement officer arrived, at which point Pendelton turned over the task of completing the citation. Pendelton then immediately retrieved a K-9 from his patrol car and began a free-air sniff of the vehicle's exterior. The K-9 alerted less than 30

---

[4] Dean said that his lack of a license plate was due to having recently purchased the vehicle.

seconds later. Pendelton then conducted a search of the vehicle's interior, where he smelled and located less than one ounce of marijuana and observed a can of air freshener on the floor

Dean later moved to suppress the marijuana discovered as a result of the K-9 free-air sniff, arguing that law enforcement prolonged the traffic stop without reasonable articulable suspicion. The trial court agreed with Dean, concluding that the smell of air fresher and the use of the small vent window did not provide reasonable articulable suspicion such that the detention could be extended to conduct a free-air sniff. This appeal by the State follows.

The Supreme Court of the United States has construed the Fourth Amendment to the United States Constitution[5] as setting forth three tiers of police-citizen encounters: "(1) communication between police and citizens involving no coercion or detention, (2) brief seizures that must be supported by reasonable suspicion, and

---

[5] U.S. CONST. amend IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."); *see also* GA. CONST. Art. 1, Sec. 1, Par. XIII ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the person or things to be seized.").

(3) full-scale arrests that must be supported by probable cause."[6] During a first-tier encounter, an officer "may approach citizens, ask for identification, ask for consent to search, and otherwise freely question the citizen without any basis or belief of criminal activity so long as the police do not detain the citizen or convey the message that the citizen may not leave."[7] And it is well settled that a citizen's ability to "walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter."[8]

During a second-tier encounter, an officer may "stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity,"[9] which means "more than a subjective,

---

[6] *Ewumi v. State*, 315 Ga. App. 656, 658 (1) (727 SE2d 257) (2012) (punctuation omitted); *accord State v. Copeland*, 310 Ga. 345, 351 (2) (b) (850 SE2d 736) (2020); *Shumate*, 372 Ga. App. at 810 (1).

[7] *Shumate*, 372 Ga. App. at 810 (1) (punctuation omitted); *accord In the Interest of D. H.*, 285 Ga. 51, 53 (2) (673 SE2d 191) (2009); *Ewumi*, 315 Ga. App. at 658 (1).

[8] *Shumate*, 372 Ga. App. at 810 (1) (punctuation omitted); *accord Ewumi*, 315 Ga. App. at 658 (1); *see Copeland*, 310 Ga. at 354 (2) (c) (ii) ("If [the citizen] assumed a 'defensive stance' while the deputies were engaged only in a first-tier encounter, such behavior would be consistent with his right to decline any contact from the police at that point in the encounter.").

[9] *Shumate*, 372 Ga. App. at 810 (1) (punctuation omitted); *accord Ewumi*, 315 Ga. App. at 658 (1); *see Copeland*, 310 Ga. at 351-52 (2) (b) (850 SE2d 736) ("In a

5

unparticularized suspicion or hunch."[10] The officer's actions during a second-tier

encounter must be "justified by specific and articulable facts which, taken together

with rational inferences from those facts, reasonably warrant [the] intrusion,"[11] and

there must be "some basis from which the court can determine that the detention was

neither arbitrary nor harassing."[12]

---

'second-tier' encounter, when an officer develops a reasonable, articulable suspicion that the citizen is committing or has committed a crime, the officer then has the authority to detain the citizen for an investigative stop.").

[10] *Shumate*, 372 Ga. App. at 810 (1) (punctuation omitted); *Ewumi*, 315 Ga. App. at 658 (1).

[11] *Shumate*, 372 Ga. App. at 810 (1) (punctuation omitted); *accord Ewumi*, 315 Ga. App. at 658-59 (1); *see Copeland*, 310 Ga. at 352 (2) (b) (noting that second-tier investigative stops, or detentions, must be supported by reasonable, articulable suspicion of criminal activity); *State v. Walker*, 295 Ga. 888, 890 (764 SE2d 804) (2014) ("[I]t is a seizure of a person that must be supported by articulable suspicion .... [A] command from a law enforcement officer, alone, is not sufficient to constitute a seizure for purposes of the Fourth Amendment. Rather, under the Fourth Amendment, a seizure occurs only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." (punctuation omitted)).

[12] *Shumate*, 372 Ga. App. at 810-11 (1) (punctuation omitted); *Ewumi*, 315 Ga. App. at 659 (1).

As our Supreme Court has explained, "the duration of an investigatory detention must be reasonable,"[13] and there are two sorts of claims that a detention has been unreasonably prolonged. In the first type of claim,

> a detention is prolonged beyond the conclusion of the investigation that warranted the detention in the first place, and in those cases, the courts generally have concluded that such a prolongation—even a short one—is unreasonable, unless, of course, good cause has appeared in the meantime to justify a continuation of the detention to pursue a different investigation.[14]

In the other type of case, the detention is not prolonged beyond the conclusion of the investigation that originally warranted the detention, but it is claimed that "the investigation took too long, perhaps because the deputy spent too much time inquiring

---

[13] *Snellings v. State*, 371 Ga. App. 795, 798 (903 SE2d 177) (2024); *see Rodriguez v. State*, 295 Ga. 362, 369 (2) (b) (761 SE2d 19) (2014) ("The duration of an investigative detention, of course, must be reasonable." (punctuation omitted)); *Goode v. State*, 367 Ga. App. 849, 850 (2) (888 SE2d 662) (2023) ("Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." (punctuation omitted)).

[14] *Snellings*, 371 Ga. App. 795, 798 (903 SE2d 177) (2024) (punctuation omitted); *accord* Rodriguez, 295 Ga. at 369 (2) (b); *State v. Jones*, 371 Ga. App. 445, 448 (1) (900 SE2d 749) (2024); *Allen v. State*, 348 Ga. App. 595, 598 (1) (a) (824 SE2d 50) (2019).

about matters unrelated to the investigation."[15] In this second type of claim, a court must examine "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant."[16] And here, Dean argued—and the trial court agreed—that the traffic stop was prolonged beyond the time reasonably necessary to complete the mission of the traffic stop without reasonable articulable suspicion to do so.

As we recently reiterated, it is "permissible to conduct an open air search around a vehicle while a traffic stop is still in progress so long as the stop has not been unreasonably prolonged for the purpose of conducting the search."[17] And whether a traffic stop was "unreasonably prolonged may often be a fact-intensive determination,

---

[15] *Snellings*, 371 Ga. App. at 798-99 (punctuation omitted); *accord Rodriguez*, 295 Ga. at 369 (2) (b); *Jones*, 371 Ga. App. at 448 (1).

[16] *Snellings*, 371 Ga. App. at 798-99 (punctuation omitted); *accord Rodriguez*, 295 Ga. at 369 (2) (b); *Jones*, 371 Ga. App. at 448 (1).

[17] *Rush v. State*, 368 Ga. App. 827, 832 (2) (890 SE2d 883) (2023) (punctuation omitted); *see Rodriguez v. United States*, 575 U.S. 348, 357 (II) (135 SCt 1609, 191 LE2d 492) (2015) ("The critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket, . . . but whether conducting the sniff 'prolongs'—i.e., adds time to—'the stop[.]'").

but it is ultimately a holding of constitutional law that we review de novo."[18] Here, the trial court relied on *State v. Thompson*[19] to support its conclusion that Sergeant Pendelton did not have a reasonable articulable suspicion to warrant an extension of Dean's detention to conduct the free air sniff, but *Thompson* is inapposite. In *Thompson*, the defendant had already received a warning citation and his license and insurance information had been returned when the officer conducted the free air search.[20]

In stark contrast, the evidence in this case—which includes video from the stop—shows that a second law-enforcement officer arrived while Sergeant Pendelton was still in the process of writing the citation; the second officer took over the task of completing the citation; and while the second officer continued working on the citation, Pendelton conducted the free-air sniff. Indeed, the trial court found that "[c]oncurrently to [the second officer] finishing up the citation, Sgt. Pendelton informed [Dean] that [he] would walk the dog around [the] vehicle" before

---

[18] *McNeil*, 362 Ga. App. at 88 (punctuation omitted).

[19] 256 Ga. App. 188 (569 SE2d 254) (2002).

[20] *Id.* at 188.

immediately retrieving the dog and beginning to do so. As a result, because the free-air sniff occurred *concurrently* with the writing of the citation, the stop was not prolonged and the trial court erroneously granted the motion to suppress.[21]

Accordingly, for all these reasons, we reverse the trial court's grant of the motion to suppress.

*Judgment reversed. Mercier, C. J., and Land, J., concur.*

---

[21] *See State v. Allen*, 298 Ga. 1, 15 (2) (f) (779 SE2d 248) (2015) (holding that stop was not prolonged when free air sniff was conducted while officer awaited the return of computer records check); *Rush*, 368 Ga. App. at 833 (2) (holding that because "the free-air sniff occurred within five minutes of the initial stop with a K-9 who was already present on the scene and while the officers were still awaiting results from the check on [the appellant's] license, [the appellant] has failed to establish that the free-air sniff unreasonably prolonged the initial detention"); *Jackson v. State*, 335 Ga. App. 630, 632, 782 S.E.2d 691, 693 (2016) (holding traffic stop was not prolonged when officer conducted free air sniff while waiting for the results of a criminal history check); *Lewis v. State*, 332 Ga. App. 466, 470 (1) (773 SE2d 423) (2015) (holding free air sniff did not unreasonably prolong trafic stop when "it did not hinder the officers' timely completion of the mission of the traffic stop" and "was initiated by one officer while a second officer finished filling out the written warning and while the officers waited for dispatch to return the check on [the] driver's license information"); *cf. McNeil*, 362 Ga. App. at 90 (holding that traffic stop was prolonged beyond the time required to issue a warning ticket for following too closely when "the sergeant clearly diverted from the task of issuing a written warning citation and abandoned the traffic investigation to instead pursue further questioning of the driver about her candle business, a matter entirely unrelated to the traffic stop").

ON MOTION FOR RECONSIDERATION

On motion for reconsideration, Dean expands upon the arguments made in his initial appellate brief. In the trial court's grant of the motion to suppress—and in Dean's appellate brief and his motion to suppress—the focus was on the law enforcement officer's deployment of a K-9 unit during the traffic stop and whether the officer had "reasonable, articulable suspicion to extend the detention and conduct the free air dog sniff." But in his motion for reconsideration, Dean now argues the officer diverted from the purpose of the stop earlier when he "hesitated in writing a citation and instead . . . inquired to the secondary unit to return to his location and discussed whether [Dean] had drugs multiple times."

Dean further quibbles with our characterization that the first officer "turned over the task of completing the citation" to the second officer when the second officer never actually completed the citation while the K-9 free air sniff occurred. But this description is inconsequential because, during the brief time the task of completing the citation was turned over before the dog alerted, it was *for the purposes* of completion. And once again, Dean then goes on to expand on his initial arguments—which focused on deployment of the K-9—to now claim that the first officer "was purposefully prolonging the detention . . . by not immediately writing a citation and hesitating and stopping this task by asking about possible drugs and asking for the other officer to come back."

Because Dean makes these arguments for the first time in this motion for reconsideration, we did not "overlook[ ] a material fact in the record, a statute, or a decision which is controlling as authority and which would require a different judgment from that rendered," nor did we "erroneously construe[ ] or misappl[y] a provision of law or a controlling authority."[1] Suffice it to say, we do not grant motions for reconsideration when arguments are raised for the first time at this stage.[2]

*Motion for reconsideration denied.*

---

[1] GA. CT. APP. R. 37 (3).

[2] *See Barnes v. State Farm Fire & Cas. Co.*, 373 Ga. App. 331, 341 (907 SE2d 305) (2024) (on motion for reconsideration) (denying MFR when appellee raised argument for the first time); *Spradling v. State*, 310 Ga. App. 337, 340 (715 SE2d 672) (2011) (on motion for reconsideration) (denying MFR when appellant raised argument for the first time); *Milligan v. State*, 307 Ga. App. 1, 5 (703 SE2d 1) (2010) (on motion for reconsideration) (denying MFR when appellant raised argument for the first time). *Cf. State v. Domenge-Delhoyo*, 338 Ga. App. 439, 447-48 (2) (790 SE2d 139) (2016) (explaining that although we can "affirm the grant of a motion to suppress if is right for any reason," the asserted ground "was not argued in the motion to suppress hearing, not ruled upon by the trial court, and not addressed by the parties in their briefs on appeal").